## Switt v. Green et al.

*Duffy, McTighe & McElhone*, for plaintiff.
*Wisler, Pearlstine, Talone & Gerber*, for defendants.

KNIGHT, P. J., November 29, 1951.—This is an action in assumpsit brought to recover the value of a certain piece of jewelry delivered on a bailment to defendants. The complaint was filed on January 7, 1950. Defendants filed an answer and under new matter alleged circumstances under which this jewelry was placed beyond their control, thus excusing a re-

delivery to plaintiffs. Upon trial before a jury, a verdict was returned in favor of plaintiffs in the amount of $4,446.00 and costs. To this verdict defendants filed motions for judgment non obstante veredicto and a new trial.

Plaintiff, a jeweler, had in his possession a diamond watch bracelet of the value of $5,000, given him for disposal by a private owner. Possession of this article of jewelry was delivered by plaintiff to defendant, Leona Green, about March 1, 1948. The conditions of this initial bailment are fixed by the pleadings. The fourth paragraph of the complaint avers that the bailment of the jewelry, "was for the purpose of allowing the said Louis Green and Leona Green to examine the said bracelet with a view toward purchasing the said bracelet from the plaintiff and bailor."

The corresponding paragraph of the answer admits: "that the purpose of the turning over of the said bracelet—was for further inspection by her and for the purpose of allowing Louis Green to examine the bracelet which plaintiff hoped to be able to sell to the defendant, Louis Green."

Defendant, Leona Green, after keeping the bracelet sometime, returned it to plaintiff for the purpose of having some repairs made to the catch and for the purpose of having the Swiss movement in the watch changed to an American movement. These alterations having been made by plaintiff, the bracelet was again delivered to defendant, Leona Green, about June 1, 1948. At the time of this redelivery, a witness for defendant testified that plaintiff, Israel Switt, said:

" 'Take that bracelet; take it home; let your friends see it.'

"She says: 'How much is it?'

"He says: 'First show it to them and if you like it. then I will give you a price'."

This is stating the scope of the bailment in the light most favorable to defendants.

Defendants took the jewelry to one or two affairs in Philadelphia, took it with them for two weeks in Florida and in August 1948 took it to Atlantic City, N. J., where it was stolen from their hotel room on the night of August 14, 1948.

Defendants set forth four points on which they base their motions for judgement n. o. v. and for new trial, each of which will be taken separately.

Defendants contend, first, that the court erred in instructing the jury that if they found that defendants had exceeded the time and geographical scope of the bailment defendants were then liable for the loss of the bailed article.

Defendants argue that the extent of the bailment in this case was almost unlimited, that no evidence was presented to support a contention that the bailor in any way limited the use of the bracelet to any particular time or place, and that since the bailor did not make a demand for the return of the bracelet there could have been no breach of the bailment contract.

In so arguing defendants disregard the fact that since there was no agreement between the parties as to the scope of the bailment, the limitations of the bailment must be drawn by inference from the nature of the transaction, the type of object being dealt with, the business of the plaintiff, the relationship of the parties, and other surrounding circumstances. Thus in Dennis v. Coleman's Parking & Greasing Stations, 211 Minn. 597, 2 N. W. (2d) 33 the court said:

". . . a bailment, like any other contract, may be established by express words, written or oral, *or by implication from acts and general conduct.*" (Italics supplied.)

In Scott on Bailments at p. 65, this leading Pennsylvania authority on the subject states that:

". . . the bailee's use is limited to the terms and *reasonable implications of his contract.*" (Italics supplied.)

Defendants claim that if there was a time limitation plaintiffs should have demanded the return of the bracelet at the expiration of that time. Cases too numerous to ennumerate state very clearly that when the special purpose of a bailment is accomplished the bailed article is to be returned or redelivered to the bailor: Wright v. Sterling Land Co., Inc., 157 Pa. Superior Ct. 625. In a bailment of this nature it is not logical to expect that the bailor should be required to make a demand upon the bailee for a return of the bailed article. The bailee was expected to return the bracelet, within reasonable limitations, when she had decided whether or not she wished to enter negotiations for its purchase. Such a decision must surely have been reached after having possession of a bracelet for almost three months.

The scope of the bailment can be ascertained by the testimony of defendants' witness quoted above. It was to take the bracelet *home* and show it to her friends. There can be little question that what plaintiff intended by this transaction was that defendant should take the bracelet home so that she might better make up her mind whether to make a purchase of it. There is no point upon which defendants can rely to support their assertion that this bailment was limitless as to time and geographical scope. Certainly there fails to appear any license for defendants to keep the bracelet for almost three months, to take it to Florida and Atlantic City, and generally treat it as their own property.

No reasonable appraisal of the nature of the bailment could indicate an intent that the bailment be limitless. In keeping the bracelet beyond a reasonable time and in exerting a dominion over this object never reasonably contemplated in making this bailment,

defendants must be deemed to have assumed responsibility for the loss thus incurred.

Defendants contend, second, that there was insufficient evidence presented by plaintiffs upon which the jury could conclude that defendants were negligent.

The evidence presented bearing on the question of negligence was to the effect that defendants placed the bracelet in a leather covered wooden traveling case along with other jewelry, locked it, and left it in their locked hotel room. Upon their return the jewelry was gone.

Both sides agree that this was a mutual benefit bailment, thus placing on defendants the duty of care which a prudent man would take of his own property in the conduct of his own business: Waugh v. Shunk, 20 Pa. 130. The bailed article in this case was not of an ordinary nature. It may be well agreed that with items of lesser value the care taken by defendants would have been sufficient to relieve them of any charge of negligence. But, as pointed out by the court in Morse v. Homer's, Inc., 295 Mass. 606, 4 N.E. (2d) 625:

"All the circumstances in a case are to be considered in determining the quality of the care which should be furnished by a bailee. One of the elements to be considered is the value of the subject of the bailment."

In that same case, which involved the theft of a diamond ring from the possession of a bailee, the court pointed out that the bailee need not have foreseen the precise manner in which the theft might be accomplished as long as there was a forseeable risk of such a theft occurring, which should have been, but was not guarded against by the bailee.

The hotel here involved was a large establishment in one of the largest resorts on the Atlantic Coast. It is a matter of common knowledge that professional jewel thieves prey on visitors at such hotels. The chattel involved was of the value of $5,000. In spite of the

presence of house detectives, the circumstances warranted the entrusting of such valuables to the care and safe keeping of the hotel safe or safe-deposit boxes provided for such purpose.

The foregoing gives rise to sufficient facts on which the jury could reasonably have based their verdict. As stated in Scott on Bailments on p. 130, and given effect in Moon v. First National Bank of Benson, 287 Pa. 398:

"If the bailment is of reciprocal benefit 'the bailee is not shielded from liability for neglect of ordinary care by proving that he has been careless, inattentive and reckless in the management of his own goods as well as those of the bailor'."

The sufficiency of evidence required to enable a jury to conclude negligence is difficult of definition, but as pointed out in Schell v. Miller N. Broad Storage Co., 157 Pa. Superior Ct. 101:

"A prima facie case is made out whenever the evidence is sufficient to justify, even though it is not strong enough to compel, an inference of negligence."

There was assuredly sufficient evidence given in this case to justify an inference of negligence and thereby to support the verdict given by the jury.

Defendants contend, third, that the charge of the court did not make clear that plaintiff had the burden of showing negligence.

This argument does not merit any discussion and may be disposed of by reference to the charge of the court on this point.

"However, if you find, and it may be that you do find, that the diamond platinum bracelet wrist watch was stolen, still you are not through, because then again *the burden shifts back to the plaintiff to show that the defendants were negligent in the way they handled this watch.*" (Italics supplied.)

Defendants contend, fourth, that the remarks of the court as to compromise and settlement were prejudicial.

That portion of the charge objected to stated in part:

"There is one thing I wish to call your attention to, because I think there might be some misunderstanding about it. It is testified here that the defendants offered some $1,500 in settlement to the plaintiff, and Mr. Switt said the offer was raised to $2,000. . . .

"It has been argued that is an admission of liability; and in some cases it might be considered an admission of liability, but on the other hand people will very often try to settle a case even if they know they are right, rather than have a suit in court, with all its publicity, with all its attending inconvenience, trouble and expense.

"So you will take into consideration the amount of the offer, the relationship of these parties, and then say what value you will give to the fact that the defendants offered to settle the case before coming into court."

The evidence above alluded to in the charge was not only presented by plaintiff without objection to its admission, but counsel for defendants cross-examined plaintiff on that very subject. If, as defendant contends, an offer to compromise or settle is not an admission of liability and is not admissible in evidence against the party by whom it was made, then counsel for the defendants should have objected to the introduction of such testimony: Wagner v. Wagner, 158 Pa. Superior Ct. 93. Nor did counsel for defendants take exception to that portion of the charge now complained of as he should have done (The Tropical Paint & Oil Co. v. Sharon Building Co., 313 Pa. 51), nor did counsel for defendants include this point as one of the reasons given in his motion and reasons for a new trial either at the time the motion was filed or within 10 days after the receipt of a copy of the stenographic

record of the case as required so to do by rule of court 24-5.

And now, November 29, 1951, for the foregoing reasons, defendants' motions for judgment n. o. v. and for a new trial are overruled and refused, and exceptions granted defendants.