## Payne v. Roberts, Appellant.

*Contract—Building contract—Construction of contract—Arbitration clause —Fraud—Collusion.*

A building contract provided that if the work done or materials provided by the contractor should be unsatisfactory to the architects, the contractor would on notice immediately remove the unsatisfactory work or materials, and supply others satisfactory to the architects. It was further provided that in case of default by the contractor, the owner, after ten days' notice to the contractor, might provide other workmen and materials to complete the work. In another part of the contract there was this provision: "If any question should arise during the progress of the work, or the settlement of accounts, it is to be referred to the architect whose decision shall be binding upon both parties; but there is reserved the right of final decision in all such questions by two disinterested parties, etc." After the work was under way, the architects notified the contractor that certain walls were unsatisfactory, and should be removed. No attention was paid to this notice, and the owner after another notice of ten days to the contractors took possession and completed the work. The evidence was insufficient to justify a finding of any fraud on the part of the architects, or of any collusion between the architects and owner. *Held*, (1) that the contractor was obliged to make the work satisfactory to the architects; (2) that having failed to do so the owner was justified in taking possession of the work and completing it; (3) that the arbitration clause did not apply to any question in which the architects were involved as parties, but only to questions arising between the owner and the contractor; (4) that the arbitration clause did not include questions that might arise between the parties themselves relating to the work or material employed.

Argued Jan. 29, 1906. Appeal, No. 241, Jan. T., 1905, by Percival Roberts, Jr., from judgment of C. P. Montgomery Co.,

June T., 1903, No. 20, on verdict for plaintiff in case of George F. Payne and Charles G. Wetter, trading as George F. Payne & Co., v. Percival Roberts, Jr. Before MITCHELL, C. J., BROWN, MESTREZAT, POTTER and STEWART, JJ. Reversed.

Assumpsit for breach of a building contract. Before SWARTZ, P. J.

At the trial it appeared that on June 1, 1902, the plaintiffs, George F. Payne & Co., who were builders, contracted with Percival Roberts, Jr., the defendant, to build for him, under the direction of Peabody & Stearns, architects, a brick and limestone residence at Narberth, Pa., for the price of $247,000.

The contract was in writing. It contained, inter alia, the following clauses :

"And in case any of said work done or materials provided by the party of the second part shall be unsatisfactory to the said architects, then the said party of the second part will, on being notified thereof by the said architects, immediately remove such unsatisfactory work or materials, and supply the place thereof with other work and materials satisfactory to the said architects."

   *    *    *    *    *    *    *    *

"In case of any failure or unreasonable delay of the said party of the second part, whether by act or default, in the performance of any of the above stipulations, or compliance with the true intent of these presents, not authorized in writing by the said party of the first part, it shall be lawful for the said party of the first part, after ten days' notice in writing to the said party of the second part to provide other workmen and materials to complete the said work in the place of the said party of the second part, and to deduct the cost and charges thereby occasioned from the sums otherwise becoming due to the said party of the second part under this agreement, without prejudice to any other remedy which the said party of the first part may have for breach thereof.

"If any question should arise during the progress of the work, or in the settlement of accounts, it is to be referred to the said architects, whose decision shall be binding upon both parties; but there is reserved the right of final decision in all such questions by two disinterested parties, one chosen by each

party to this agreement; and in the event of the parties so chosen failing to agree, they are to have the power to choose a third, and the decision of two of the referees so chosen shall be binding on both parties."

Other facts are stated in the opinion of the Supreme Court.

The court charged in part as follows:

[Had the defendant, Mr. Roberts, the right under the facts and circumstances in the case to provide other workmen and materials to complete the work? This was a matter that the defendant had under consideration when he executed the contract, for provision was made for the exercise of the right should the contingency arise. It was a question that might arise during the progress of the work. It was, therefore, a question which under the fourth clause of the contract was to be referred to the architects. The right, however, was reserved to have the final decision referred to arbitrators. These arbitrators were not named, and I therefore charge you that either party could decline to refer the matter to such unnamed board of arbitrators and refer the final decision to a jury of common law. The bringing of this suit by the plaintiffs is an election by them to try the question before a jury.] [3]

[The specifications were not followed so far as the use of nonstaining cement is concerned. If the architects acted in good faith when they declared they were dissatisfied with the walls, then it was the duty of the plaintiffs to remove the walls. If they refused, and went on building for ten days and more upon these walls, such conduct was a declaration on their part that they would not comply with that provision of their contract, which required them to make their work satisfactory to the architects. This refusal gave the right to the defendant to take possession and to complete the work. The important question for you to determine, therefore, is whether the architects were in fact dissatisfied with the walls. Did they act in good faith when they said they were dissatisfied? Were they in truth and fact satisfied, or did they simply voice the judgment of someone else and not their own, when they said they were not satisfied?] [4]

[If you find that the architects were not in truth dissatisfied with the work and materials, then the question arises whether

the failure to observe the cement requirements was such a default in performance as to justify the defendant in taking possession and completing the house. Here, again, the question of substantial performance must be considered by you. If by reason of this departure as to stainless cement, there was no substantial performance of the contract, then such act was a default in the performance of the stipulation of the contract. You have heard what was said about the liability of limestone to absorb color from surrounding matter. Was the stainless cement as used by the plaintiffs so used as to protect the stone? Was the failure to use it as directed by the specifications a failure to perform in a comparatively unimportant item? Was the failure a minor particular and of no serious moment to the building?] [5]

Defendant presented this point:

2. The undisputed evidence is that on January 21, 1903, the architect condemned the exterior walls as far as erected and ordered them to be removed; that plaintiffs refused to obey the order and continued to build on the walls; that the defendant thereupon gave plaintiffs ten days' notice that he would take possession and finish the work himself in accordance with the contract, and that plaintiffs continued during the whole of the ten days and afterwards to build on the condemned walls. Under these circumstances the defendant had the right to take possession and finish the building, and his action in doing so was not a breach of the contract. *Answer:* This is refused. There are other circumstances or questions of fact involved upon which the jury must pass in order to determine whether the defendant had the right to take possession and finish the building. [6]

Verdict for plaintiff for $96,184.98 upon which judgment was entered for $92,497.70. Defendant appealed.

*Errors assigned* were (1) refusal of binding instructions for defendant, and (3–6) above instructions, quoting them.

*Frank P. Prichard* and *John G. Johnson*, with them *Montgomery Evans*, for appellant.—Irrespective of all other questions in the case, the fact that the contractors were clearly violating the written specifications on January 21, 1903, by the use of

common instead of nonstaining cement in the exterior walls; that they did not stop when their attention was called to this violation and its importance; that in defiance of the orders of the architect they continued this specific violation during the ten days' notice given them by the owner and afterwards until a bill in equity was filed against them, justified the owner in finishing the work by his own workmen.

With regard to the other violations of the contract alleged by the owner, it was proved and not denied that the builder refused to remove work declared unsatisfactory by the architect after the question had been referred to the architect and he had inspected the work in the presence of both parties. There was not sufficient evidence on which to submit to the jury any question of fraud on the part of the owner and architect, and therefore there was a distinct violation of the contract which entitled the owner to exercise his right to take possession: Reynolds v. Caldwell, 51 Pa. 298; Lucas Coal Co. v. D. & H. Canal Co., 148 Pa. 227; Hartupee v. Pittsburg, 97 Pa. 107; Hostetter v. Pittsburg, 107 Pa. 419; Hartupee v. Pittsburg, 131 Pa. 535.

Both parties having agreed by this building contract that the decision of a named architect as to questions in dispute should be final, reserving only the right to appeal from his decision to arbitration by unnamed arbitrators, neither party could, after the decision of the architect, and without tendering arbitration, refuse to abide by the decision of the architect, and reopen the whole question for a jury: Monongahela Nav. Co. v. Fenlon, 4 Watts & Sergeant, 205; Lucas Coal Co. v. D. & H. Canal Co., 148 Pa. 227; McCune v. Lytle, 197 Pa. 404; D. & H. Canal Co. v. Penna. Coal Co., 50 N. Y. 250.

*N. H. Larzelere,* with him *Ruby R. Vale* and *Edward W. Magill,* for appellees.—The good faith, capriciousness or fraud of the architects is always a relevant inquiry in an action against the party beneficially interested in the decision of the architects and who is a party to the bad faith, collusion or fraud, and when there is any evidence tending to show the absence of good faith or the presence of capriciousness or fraud on the part of the architects, or of collusion between the architects and the party benefited by the decision, or of

coercion on the part of the party beneficially interested, this evidence should be submitted to a jury for their finding as a fact whether the decision or award by the architects was in good faith or fraudulent or capricious : Speer v. Bidwell, 44 Pa. 23 ; Brandon v. Forest County, 59 Pa. 187 ; Alexander v. Scranton Savings Bank, 3 Lancaster, 354 ; Connor v. Simpson, 7 Atl. Repr. 161.

A provision in a building contract that the contractor is to be paid upon his producing to the owner the written certificate of the architect that the work has been completed to his satisfaction and within the time stipulated in the contract, is for the protection of the owner against any unjust or unfounded claim by the contractor. Hence, if the contractor honestly performs the covenants of the agreement, such provision is not intended to enable the owner to evade an honest payment of the price by the capricious or fraudulent withholding of the certificate: Whelen v. Boyd, 114 Pa. 228 ; Badger v. Kerber, 61 Ill. 328 ; G. A. Fuller Co. v. B. P. Young Co., 126 Fed. Repr. 343.

The courts of this commonwealth will not take away from a party the right of a trial by jury by implication merely and will do so only when it affirmatively and clearly appears that the party by express agreement has dispensed with it, and that consequently an agreement of reference to even a specifically named person or designated tribunal is not binding on the parties unless there is a stipulation as to the finality of the decision of such arbitrator irrespective of such conditions or contingencies: Memphis, etc., R. R. Co. v. Wilcox, 48 Pa. 161 ; Chandley v. Cambridge Springs Boro., 200 Pa. 230 ; Dobbling v. York Springs Ry. Co., 203 Pa. 628 ; Lauman v. Young, 31 Pa. 306.

It is a principle of law settled by a long line of cases that a prospective submission to arbitrate, but not providing for submission to any specifically named person or particular tribunal, but to persons eventually to be chosen by the parties is revocable by either party and is inadequate to oust the jurisdiction of the court having cognizance of the subject-matter of the dispute : Snodgrass v. Gavit, 28 Pa. 221 ; Yost v. Ins. Co., 179 Pa. 381 ; Rogers v. Davidson, 4 Penny. 472 ; McCune v. Lytle, 197 Pa. 404.

In order to oust the jurisdiction of the courts, it must clearly appear that the subject-matter of the controversy passed upon by the party or tribunal designated as arbitrator was intended by the parties to be within the contemplation of the prospective submission, and that in the case at bar, neither party to the agreement contemplated that the architect had the right or power to pass on the right of forfeiture, or damages resulting from the breach of the contract: Dobbling v. Railway Co., 203 Pa. 628; Somerset Borough v. Ott, 207 Pa. 539 ; Lauman v. Young, 31 Pa. 306.

A reasonable interpretation of these several sections of this contract and the contract as a whole, is to regard it not as vesting in the defendant an arbitrary or absolute discretionary right to forfeit, but, on the contrary, it should be construed as providing a particular mode by which the defendant may proceed with the construction of the building, after a well-defined, certain, or admitted breach or default on the part of the contractor: Duplan Silk Co. v. Spencer, 115 Fed. Repr. 689; Hoyle v. Stellwagen, 28 Ind. App. Ct. 681 (63 N. E. Repr. 780).

OPINION BY MR. JUSTICE STEWART,  April 9, 1906 :

By written articles of agreement entered into June 1, 1902, George F. Payne & Company, here the appellees, undertook to construct and erect for Percival Roberts, Jr., the appellant, a dwelling house at Narberth, Penna., in accordance with certain plans and specifications made part of the agreement, to provide all the materials for the same, and perform the work in connection therewith in a good and workmanlike manner, under the direction of the architects, Peabody & Stearns, for the consideration of $247,000.   The work under the contract was duly entered upon, and had so far progressed that the walls of the house were in the course of erection, some of them being as high as the second story, when the contractors were required by the owner to cease work and turn over to him the unfinished building, to be completed by his own workmen. The owner claimed the right to do this under the third clause in the contract, which reads as follows : " In case of any failure or unreasonable delay of the said party of the second part, whether by act or default in the performance of any of the

above stipulations, or compliance with the true intent of these presents, not authorized in writing, by the said party of the first part, it shall be lawful for the said party of the first part, after ten days' notice in writing to the said party of the second part, to provide other workmen and materials to complete the said work in the place of the said party of the second .part, and to deduct the costs and charges thereby occasioned from the sums otherwise becoming due the said party of the second part under this agreement, without prejudice to any other remedy which the said party of the first part may have for breach thereof." The contractors, being thus required to relinquish the work, brought this action against the owner to recover damages on account of an alleged breach of contract. In the statement of claim filed by the plaintiffs in the action, the breach complained of was thus averred: " That after the execution of said agreement, to wit, on or about the 1st day of June, 1902, they entered upon the performance of their contract, began the construction of the said dwelling house at Narberth, Penna., referred to in said contract, and continued in the construction of the same until on or about the 20th day of February, 1903, when the defendant arbitrarily, wrongfully and illegally refused to permit the plaintiffs to proceed further with the construction of the said dwelling house and in the performance of their contract, although ready and willing so to do." That the defendant did interfere and require the plaintiffs to cease and quit the work at the point of time alleged, is a fact in the case; whether he did so arbitrarily, wrongfully and illegally, is the question to be resolved. It was resolved by the jury under instructions from the court as to the law applicable to the case, and adversely to the defendant, against whom a verdict for $96,184.98 was returned, subsequently reduced by the court to $92,497.70. The appellant insists that the instructions of the court were erroneous, and that the jury were permitted to pass on questions not proper for their consideration.

With the frequent disputes which arose between owner and contractors as the work progressed, we have no concern. We may wholly dismiss them from consideration, since it was but a single act of the owner, and that the final one, requiring the contractors to give over the work, that is complained of as the

breach; and this if excusable or justifiable, was so because of
the final act of the contractors in refusing to take down the
walls which had been condemned by the architects.   On Janu-
ary 21, 1903, the architects having made an examination of the
work so far as then completed, reported in writing to the con-
tractors, and verbally to the owner, that the work failed to
comply with the specifications in five particulars.   These par-
ticulars all relate to the walls which had been erected, and
while each might well be regarded as a matter of moment, it
is unnecessary here to specify more than one.   The third par-
ticular as stated in the report made special reference to the
substitution of a different cement, in the exterior brick walls
and interior walls containing limestone, for the particular
cement called for by the specifications.   The report says:
" The use of the common cement in the walls renders them of
very much less value than if the specifications had been com-
plied with, and we cannot accept the work.   It is impossible
to remedy this without taking down the walls which have been
erected, and we therefore reject the walls so far as you have
them finished, and require you to take them down under the
clause of the contract which requires you to immediately re-
move any work or materials unsatisfactory to the architects."
The report concludes : " Upon discovering to-day the serious
condition of the work, we directed, through your representa-
tive, that all work should be stopped, and have notified the
owner of the condition of affairs."   The clause of the contract
to which reference is here made, is to be found in the first sec-
tion and reads as follows : " And in case any of said work done
or materials provided by the said party of the second part shall
be unsatisfactory to the said architects, then the said party of
the second part will, on being notified thereof by the said
architects, immediately remove such unsatisfactory work and
materials, and supply the place thereof with other work and
materials satisfactory to the said architects."   Acting upon
this report of the architects the owner wrote to the contractors
under date of January 22, 1903, as follows : " I am also in
receipt of copy of letter to you from Messrs. Peabody & Stearns
under date of 1/21/03.   From this it appears that the situation
at Narberth has not improved but grown steadily worse.   Not-
withstanding notices given your Mr. Bechold by Mr. Stearns

to suspend work as same was not in accordance with specifications, I am informed that you are proceeding with the same to-day. I hereby notify you that owing to the unsatisfactory condition of affairs I will exercise my right in clause three of the contract and take possession of the work with my own men ten days from this date." At the end of the ten days, the contractors being still in the possession of the building, and not having taken down the walls as required by the architects, but continuing to build thereon, counsel for the owner addressed to the contractors a written demand for a surrender of the premises. This not being complied with, on February 9, the owner filed his bill in equity praying among other things for an injunction restraining the contractors from proceeding further with the work. No answer was filed, but on representation to counsel for the contractors that the five day injunction would on the following day be asked for on the bill, the contractors withdrew from the building, protesting that they yielded only for the purpose of avoiding litigation, without admitting that the walls did not correspond to the specifications. We have here stated every material fact that is necessary for an understanding of this appeal. The case as tried in the court below would seem somewhat anomalous, inasmuch as the record shows an action successfully maintained for damages resulting from an alleged breach of contract, when the damages claimed and allowed resulted, not from any breach of the contract by the owner, but in consequence of his strict observance of the contract in pursuing a remedy therein provided, and in the way therein prescribed. It appeared from the plaintiffs' own showing that they received express notice from the architects that the walls were not satisfactory to them, and a direction that they should be taken down and rebuilt in conformity with the specifications; that notwithstanding this notice the work of building the walls was continued without change in method or material; that the owner notified them that in consequence of their disregard of the notice from the architects, he would exercise his right under the contract to take possession of the building in ten days thereafter, and that in defiance of both architects and owner, the work was proceeded with as before, until possession was finally yielded to the owner under threat of legal proceedings. Here was a breach of the contract,

but, for all that has yet appeared, it was not a breach by the
owner.   In rescinding the contract and requiring a surrender
of the building, he was doing what the contract expressly al-
lowed, upon just such event as that which admittedly occurred.
In failing in the first instance to make the walls satisfactory to
the architects, and afterwards in refusing to remove and replace
them with others, the contractors were not only in default, but
they were positively and defiantly asserting themselves in op-
position to the express terms of the contract.   Clearly the
breach at this point was theirs.   It was however urged that,
notwithstanding the foregoing facts, it remained a question to
be inquired into at the instance of the plaintiff, not whether
the architects had condemned the walls and required their re-
moval, but whether the dissatisfaction expressed was due to
mistaken judgment, or dishonesty of purpose, with the legal
result that if either could be shown, the breach of the contract
would be the act of the owner and not that of the contractors.
And this view prevailed with the court, because of the fourth
section of the contract which reads as follows : " If any ques-
tion should arise during the progress of the work, or in settle-
ment of accounts, it is to be referred to the said architects,
whose decision shall be binding upon both parties ; but there
is reserved the right of final decision in all such questions by
two disinterested parties, one chosen by each party to this
agreement ; and in the event of the parties so chosen failing
to agree, they are to have the power to choose a third ; and
the decision of two of the referees so chosen shall be binding
upon both parties."   Whether this agreement for reference
and arbitration is revocable was a question much discussed in
the court below and here, but we regard it as aside from the
present inquiry.   As we read the entire contract, this particular
provision can have no application to the present controversy.
The manifest purpose of the clause was to provide a conven-
ient method for the prompt settlement of such questions as
might arise between the parties, to the end that the work might
not be interfered with and delayed.   It does not, either by ex-
press terms or reasonable construction, include questions that
might arise between the parties or either of them, and other
persons incidentally connected with or interested about the
contract, as for instance, the architects ; but is limited to ques-

tions arising between the parties themselves.   Since the architects are made the referees in the first instance, it certainly could not be held to include questions to which they themselves were parties.   Nor does it include questions that might arise between the parties themselves touching the manner of their work or materials employed, for the reason that by express provision these were to be satisfactory to the architects; their approval was to be the only test of their sufficiency; to this measure both must come, the owner could demand no more, the contractors could escape with nothing less.   A reading of the whole contract will show a wide field for controversy outside of these particular questions, in which the provision for reference and arbitration could properly operate; so that the construction we are giving the clause cannot be said to make it ineffective or useless.   With such a test with respect to work and materials, that is, the satisfaction of the architects, it is impossible to understand how a question could arise between the parties to the contract respecting either of these things. Difference of view there might be as whether either or both conformed to the specifications, but this, except as the architects were satisfied of the conformity, was not to be the test. If they met the approval of the architects, that was the end of the controversy.   At the time of the alleged breach of the contract by the owner, there admittedly was an open dispute between architect and contractors as to whether work and materials conformed to the specifications, the former having based their rejection of the walls upon their want of conformity.   As we have said this was not a matter to be referred under this particular clause, first, because such reference would have to be to the architects themselves in the first instance, a circumstance of itself indicating clearly the inapplicability of the clause to such a question; and again on appeal the only question would be whether the architects were or were not satisfied with the walls.   That is to say, the architects on reference to themselves having determined that they were not satisfied with the walls, on appeal it might be · decided by others for them that they were satisfied, notwithstanding they themselves thought and said they were not.   It is quite manifest, we think, that no such submission could have been contemplated.   The fact that the owner expressed his dissatisfaction with the walls,

did not make him a party to the question, so as to entitle it to a submission. He was interested of course, but the contractors could be entirely indifferent, if they chose, to his dissatisfaction. However vigorously expressed, they could answer as they did through Mr. Wetter, one of the firm, when on one occasion the owner remonstrated about the work. The testimony of this witness very clearly indicates, we think, the plaintiffs' understanding of the contract. When asked what took place between him and the defendant his reply was: " In the early part of December, I think it was on December 6, 1902, I met Mr. Stearns by appointment in Mr. Roberts' office at the Arcade building, Philadelphia, and we discussed then these various questions about the bricks not being covered, and so on, and Mr. Roberts was talking in a general way about the progress of his work, this was not satisfactory, and so on, and so on. I said 'While it seems to me, Mr. Roberts, this complaint should come from your architect, and not through you, or at least '—I ought to say before that time he said 'I have written you letters right along but you pay no attention to them; you do not even answer them.' I said ' No. The complaint should come through your architects and not through you. You are the owner in this case, but the architects have entire supervision of the work, and if there are any complaints they should come through them.' "

Such a provision as this, requiring the work and materials to meet the satisfaction of the architects, is neither unusual nor unreasonable. True, it confides much in the judgment, impartiality and integrity of the architect; but it has long been a feature in building contracts, and that it obtains to-day as largely as ever shows that experience has approved it. In Kennedy v. Poor, 151 Pa. 472, there was a similar agreement and it is thus referred to: " Presumably no more suitable selection can be made than the architect who draws the plans and who is to superintend the work. He is certainly more competent to determine any difficulty that might arise than a jury indifferently chosen and without the requisite information or power to require it: Monongahela Nav. Co. v. Fenlon, 4 W. & S. 205. This reference was an essential part of the contract, voluntarily entered into by the parties. There was no rule or policy of law which forbade it; and neither party is at liberty to depart from it."

The question then not being a matter proper for reference under this clause in the agreement, how does the case stand? Were the architects dissatisfied with the walls? They so declared at the time, they have persisted in it, and the owner acted upon their representation as to the fact. Was this dissatisfaction due to faulty or mistaken judgment? The contractors' effort should have been to convince the architects of their mistake; failing in this their obligation under the contract was to submit to the decision. Was it due to dishonesty of purpose? The remedy in such case must be against the architects, and not against the owner except as collusion can be shown between them. "How could the misconduct of the chosen arbitrator deprive the defendants of a right secured by them by the contract to a right of exemption from liability to any suit upon it? If the engineer undertook to act as umpire and fraudulently injure the plaintiff, he had a remedy by action against the guilty agent, and not by suit on the contract. He cannot punish the defendants for a fault of which they are innocent:" Reynolds v. Caldwell, 51 Pa. 298.

Nothing we have said with respect to this contract, and the rights and obligations of the parties thereunder, is at variance with the views of the learned trial judge, except as to the operation of this reference clause. He held that the condemnation of the walls by the architects, would have given the owner the right to take possession of the building and complete it, except for the provision in the contract reserving to either party the right of appeal. We are of opinion that this clause in the contract has no applicability to the contention here, and that the rejection of the walls by the architects was final and conclusive. Notwithstanding all we have said, however, and wholly independent of the reference clause, the plaintiffs would still have the right to maintain an action on the contract, if they could show that the dissatisfaction expressed by the architects, was brought about through collusion between the latter and the owner, in order to disturb and defeat the plaintiff in the lawful exercise of their work. While the pleadings in the case define no such issue, yet considerable evidence was admitted which plaintiffs insist warrants an inference that the decision of the architects did not reflect their honest and impartial judgment, but the views and wishes of a dissatisfied owner. So far as we

see, this evidence was admitted without objection as to its relevancy under the pleadings, and it was therefore properly in the case.  It would burden unduly this opinion to recite it all here.   Briefly stated, it was contended that the evidence showed a substantial compliance of the contract by the plaintiffs; continued and unreasonable complaints by the owner with respect to the work from the time it was commenced; an earlier effort on his part, not however persisted in, without sufficient warrant, to take possession of the uncompleted building; the presence of the architects at the building on several occasions while the walls were in the course of erection when they must have seen those things being done, which they afterwards asserted were departures from the specifications, and because of which they required the walls to be removed, and yet allowed the plaintiffs to proceed with the work as though it were acceptable; that finally, when they rejected the walls, it was after consultation with the owner, and the papers they signed addressed to the plaintiffs in which they required the walls to be taken down were prepared in the office of defendant's counsel.  It was on this claim as to what the evidence, if believed, established, that it was submitted to the jury to determine—we quote from the charge by the court—" Whether the architects were in point of fact dissatisfied with the walls.   Did they act in good faith when they said they were dissatisfied?   Were they in truth and in fact satisfied, or did they simply voice the judgment of someone else, and not their own, when they said they were not satisfied ? "

Admitting that there was evidence to establish each and all of the particular facts relied upon, the case falls short of meeting. the requirements.   The alleged substantial compliance with the contract was very far from being an admitted fact; although on the issue the finding was for the plaintiff, yet the testimony in regard to it was so divergent that the finding of the jury would be an insufficient basis for an inference of bad faith in the architects.   It was a subject upon which the expert witnesses, apparently of equal credit, differed widely and irreconcilably.   The dissatisfaction of the owner with the work, and his desire, if this be admitted, to complete it himself, is a circumstance which, if supported by other facts, would be entitled to some weight in the inquiry.   The fact, if it be a fact,

that the architects knew of the manner in which the work was being done; that they made no objection but allowed it to proceed until a large expenditure had been made, may reflect upon the competency of the architects; but unless it can be in some way related to some act of the defendant, it is without other significance. The mere fact that their final disapproval of the walls was put in writing in the office of the defendant's counsel, does not of itself establish such relation. The evidence was wholly inadequate to support a verdict for the plaintiffs on this issue and, without more, the question ought not to have been submitted to the jury. We have here referred only to the salient features of the testimony on this branch of the case, but we have had regard to it all, after careful reading of it. Considered as a whole, we fail to see anything in it that would warrant even reasonable supposition of bad faith on the part of the architects. Without this on their part, neither persistent opposition by the owner to the contractors, nor his repeated and continued remonstrances and arguments addressed to the architects, could establish the combination and collusion necessary to avoid the finding of the latter. He had the undoubted right to address the architects, to call their attention to anything which he regarded as a deviation from the specifications, and use whatever proper arguments he could to convince them of the fact. So far as the evidence shows he went no further. The fact that there was coincidence of views between the owner and architects can certainly warrant no inference that it was brought about by unfair or dishonest influences or practices, even though supported by a verdict of a jury to the effect that there was substantial compliance of the contract.

It results from what we have said that defendant's first specification of error—that the court erred in declining to charge as requested in defendant's seventh point, that under the evidence the verdict must be in favor of the defendant—must be sustained.

Judgment reversed.