Appel Media, Inc., a Corporation, and Appel Visual Service, Inc., a Corporation, Appellants, *v.* Clarion State College and Commonwealth of Pennsylvania, **Board of Arbitration of Claims, Appellees.**

636

Argued June 5, 1974, before President Judge Bow-
MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON
JR., MENCER, ROGERS and BLATT.

*Edward P. Zemprelli,* for appellants.

*Theodore A. Adler,* Deputy Attorney General, with
him *Israel Packel,* Attorney General, for appellees.

OPINION BY JUDGE BLATT, October 31, 1974:

On September 3, 1969, the Commonwealth of Penn-
sylvania, acting through the Department of Property

and Supplies (Department), accepted the bid of Appel Visual Services, Inc. (Appel Visual) for furnishing television distribution facilities at Clarion State College. Appel Visual's bid was $61,239. On October 15, 1969, the Director of Purchases for the Department was notified that Appel Media, Inc. (Appel Media) would be assuming the contractual responsibility of Appel Visual for the installation of the system, Appel Media having recently contracted with Appel Visual to assume and perform contracts which had already been negotiated by Appel Visual and for which work had not yet been begun. Appel Media is a Pennsylvania corporation engaged in the business of installing and servicing audiovisual equipment and video systems for school and university use.

Installation was begun by Appel Media in December of 1969, at which time the anticipated completion date was February 15, 1970. Problems in installation developed almost immediately, however, and there was a series of meetings and inspections during the ensuing months of 1970 which involved representatives of Appel Media, College personnel, engineers and a representative of the Attorney General. Finally, after an inspection on October 21 and 22 of 1970, the engineer commissioned by the Department issued his inspection report, which detailed numerous defects. Appel Media learned of this report and of the Department's intention to advertise for bids to complete the work, and it then ceased any further efforts to complete the contract, leaving some of its materials on the premises. In November, the Department invited bids from other contractors to complete the installation of the system, and Telesonic Assoc., Inc. (Telesonic) was awarded a $40,000 contract for that purpose on March 21, 1971.

Appel Media filed a complaint in assumpsit with the Board of Arbitration of Claims (Board) to recover payment in full of the original contract price. After

preliminary objections were filed and dismissed, a hearing was held on May 8-9, 1973. On October 25, 1973, the Board entered an order in favor of Appel Media in the amount of $24,139, a figure arrived at by subtracting the cost of completing the work from the original contract price and adding interest. Appel Media filed a timely appeal with this court, asserting that it is entitled to the entire contract price plus interest.

The scope of our review in an appeal from an order of the Board is governed by Section 8(c) of the Act of May 20, 1937, P. L. 728, *as amended*, 72 P.S. §4651-8(c) which provides in part: "After hearing, the court shall affirm the order unless it shall find that the same is not in accordance with law. The findings of the board as to the facts, if supported by substantial evidence, shall be conclusive." Substantial evidence is the relevant evidence acceptable by a reasonable mind as adequate to support a conclusion. *Penn-Jersey Contractors, Inc. v. The General State Authority*, 12 Pa. Commonwealth Ct. 203, 315 A. 2d 920 (1974) ; *Department of Property and Supplies v. Berger*, 11 Pa. Commonwealth Ct. 332, 312 A. 2d 100 (1973).

Although Appel Media admits that the results of its work were not up to the requirements of its contract, it asserts that it expended the time, labor, material and money called for in the contract and in accompanying plans and specifications. Appel Media blames its failure to produce the proper results on electrical grounding conditions which were peculiar to the site at Clarion State College, and which were known only by the defendant when Appel Visual's bid was accepted. Because Appel Media did not adequately cope with the grounding problems, there was a hum interference with the signals received over the system so that a darkened line would appear across the television monitor. The hum interference exceeded that called for in the contract's performance specifications.

Appel Media cites the rule that "a contractor who builds according to the plans and specifications is not responsible for the results." *Mannella v. Pittsburgh,* 334 Pa. 396, 400, 6 A. 2d 70, 72 n.1 (1939). In citing this rule of law, however, Appel Media misconstrues the nature of the duties which it undertook in assuming responsibility for installation of the system. Section 4-4 of the contract specifications provides:

"Because all these transmission facilities are in proximity to AC power lines it is expected that some hum interference will be received by the cables. In the event the CONTRACTOR does not meet the Video Signal-to-Hum or Signal-to-Interference Specifications he shall use a differential imput video amplifier having 46 db of 60 Hz ground loop hum bucking similar to the Ward Electronic Industries Type TA 901 Video Distribution Amplifier.

"If the video signals do not meet the hum or interference specifications then the CONTRACTOR shall be required to make adjustments to the grounding and isolation of the system to attempt to improve these performances."

Obviously the specifications did not call for installation of the system merely in conformity with a given set of equipment and labor specifications. The potential hum interference problem was recognized from the outset and the specifications were left deliberately unfixed. Appel Media undertook to meet certain performance levels and to use whatever equipment and labor as would be necessary to meet those levels.

Nor may Appel Media be relieved of its responsibilities in this case because the job became more difficult than originally anticipated, even though representatives of the College and the Department's engineer had been aware of the grounding problem. Even though Appel Media and its predecessor, Appel Visual, may not have been aware of this problem, a unilateral mistake not

due to the fault of the party not mistaken, but due to the negligence of the one who acted under the mistake affords no basis for relief. *McFadden v. American Oil Company*, 215 Pa. Superior Ct. 44, 257 A. 2d 283 (1969); *Seaboard Radio Broadcasting Corporation v. Yassky*, 176 Pa. Superior Ct. 453, 107 A. 2d 618 (1954). Aside from Section 4.4 of the specifications, which should have alerted the appellant to the problem of hum interference, Section 3.3.2 of the general conditions, to which the contractor agreed, provides in part: "The CONTRACTOR assumes full responsibility for having familiarized himself with the nature and extent of the Contract Documents, Work, locality, and local conditions that may in any manner affect the Work to be done." If Appel Media and/or Appel Visual indeed remained unaware of the electrical grounding problem, then it was clearly due to their own neglect.

We acknowledge that, if one party knows or has good reason to know of the unilateral mistake of the other party to a contract, relief will be granted to the same extent as in the case of a mutual mistake. *McFadden, supra.* Here, however, the appellant has not shown that any agents of the Department knew that the appellant was acting under a misapprehension.

The Department's right to have the defective work corrected by another contractor is founded in Section 3.11.2 of the general conditions of the contract: "If required by the ENGINEER prior to approval of final payment, the CONTRACTOR will promptly, without cost to the OWNER and as required by the ENGINEER, either correct any defective Work, whether or not fabricated, installed or completed, or, if the Work has been rejected by the ENGINEER, remove it from the site and replace it with nondefective Work. If the CONTRACTOR does not correct such defective Work or remove and replace such rejected Work within a reasonable time, all as required by prior written notice from the ENGINEER, the

Owner may have the deficiency corrected or the rejected Work removed and replaced. All direct or indirect costs of such correction or removal and replacement, including compensation for additional professional services shall be paid by the CONTRACTOR, and an appropriate Order shall be issued deducting all such costs from the Contract Price. The CONTRACTOR will also bear the expenses of making good all work of others destroyed or damaged by his correction, removal or replacement of his defective Work."

Our courts have clearly held that a party to a contract which has been breached by the other party may secure a substitute to complete the contract when the contract so provides. *Payne v. Roberts*, 214 Pa. 568, 64 A. 86 (1906). Appel Media here was clearly given a reasonable time to complete its contract by correcting the deficiencies in its work. The original completion date was in February of 1970 and complaints about the results of Appel Media's work were voiced from that time through to the month of October. Moreover, the new contract to complete installation was not awarded until March of 1971.

The Appel Media claim for recovery of the full contract price must, therfore, be denied. It is now entitled to the contract price minus the cost of contract completion, as provided in Section 3.11.2 of the general conditions of its contract and, of course, the Board properly added interest.

The Board's order is, therefore, affirmed.

———

DISSENTING OPINION BY JUDGE KRAMER:

I respectfully dissent for the basic reason that the majority opinion perforce must make its own findings of fact in order to substantiate the result. I would have little difficulty concurring if the Board of Arbitration of Claims (Board) had made findings or conclusions that somehow Appel Media, Inc. had breached its con-

tract with the Commonwealth. The problem is that no such findings or conclusions were made by the Board.

A careful reading of the adjudication indicates pertinently (1) that the "Commonwealth permitted . . . Appel Media, Inc. to perform the contract [and] accepted the benefits and fruits of such performance . . . ."; (2) that the Commonwealth "suspended the contract . . . prior to the Plaintiff [Appel Media, Inc.] completing all work on said contract."; and (3) that "[t]he contract was completed by Telesonic." Nowhere is there a finding that notice of any defects was given to Appel Media, Inc. as required by the contract, or that it was given the opportunity to complete the contract. There is not one finding or conclusion in the adjudication on how, when, or if Appel Media, Inc. breached its contract. The "opinion" portion of the adjudication states that Appel Media, Inc. did not fulfill its obligations in accordance with the contract, and concludes that it is not entitled to "the full amount of its claim." The problem here is that we don't know whether the contract obligations were not fulfilled because Appel Media, Inc. was ordered off the job or for some other reason. Here again the adjudication does not make any adequate findings of fact on why Appel Media did not complete the contract. The adjudication leaves the question open on why Appel Media did not fulfill the contract or why the Commonwealth suspended the contract. As a matter of fact, a reading of the entire adjudication would permit one to assume that the Commonwealth breached the contract, rather than vice versa. The adjudication is not complete.

Under these circumstances, it is not possible to affirm the adjudication because it does not contain the necessary findings of fact and conclusions from which the basis for the order can be determined. If the finders of the facts should determine that the humming in the system was caused by an outside source known to

the College and the Commonwealth and that such information was intentionally withheld from Appel Media, Inc., then it is quite conceivable that Appel Media, Inc. is entitled to more than the order states. Under the adjudication I fail to understand how Appel Media, Inc. is not entitled to an amount equal to at least the value of the material the Commonwealth accepted and used. In any event, I would remand this matter to the Board for proper findings of fact and conclusions of law.