460

Sanctis Construction, Inc. *v.* Commonwealth of Pennsylvania, Department of Transportation, Appellant.

Argued February 3, 1976, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Arthur H. Marateck,* Assistant Attorney General, with him *Robert W. Cunliffe,* Deputy Attorney Gen-

eral, and *Robert P. Kane,* Attorney General, for appellant.

*Samuel J. Margiotti,* with him *Vincent M. Casey,* and *Margiotti, Rich & Gravina,* for appellee.

OPINION BY JUDGE BLATT, July 14, 1976:

This is an appeal by the Commonwealth of Pennsylvania, Department of Transportation (PennDOT) from a judgment of the Board of Arbitration and Claims (Board). Judgment was entered in favor of the Sanctis Construction Company, Inc. (Sanctis) on its claim for interest on money owed by PennDOT under a highway construction contract.

PennDOT had entered into a contract with Sanctis for the construction of highway improvements near the Fort Duquesne Bridge and the Three Rivers Stadium in Pittsburgh. In November of 1970, as the improvements were nearing completion, PennDOT directed Sanctis to undertake some additional work not called for in the original contract but to be performed and paid for on a so-called force account basis in accordance with a provision therefor in the original agreement. On or before December 1, 1970, Sanctis completed the work called for under the original contract and, in fact, PennDOT had already opened the highway to traffic by that date. Nine months later, in a letter dated August 19, 1971, PennDOT advised Sanctis that on December 1, 1970, the completed work was "inspected and found acceptable." And, in its brief before the Court, PennDOT has indicated that the work performed under the force account was completed on June 3, 1971. Final payment of $118,000.24 due on both projects, however, was not made by Penn-

---

[1] Numerous reasons for the long delay in payment are suggested, most of which seem to indicate PennDOT as being responsible for the delay. Sanctis, however, has failed to allege fraud or other mis-

DOT until May 21, 1973[1] after which Sanctis filed a complaint with the Board seeking to recover 5% interest computed from 90 days after December 1, 1970 and June 3, 1971, respectively, on portions of the amount due on each account. The Board ruled in favor of Sanctis and this appeal by PennDOT followed.[2]

In appeals from Board orders, we are bound by the Board's findings of fact if such are supported by substantial evidence, and, if they are so supported, we must affirm the Board's order unless it violates applicable statutory and constitutional law. *See* Section 8(c) of the Act of May 20, 1937, P.L. 728, *as amended,* 72 P.S. §4651-8(c); *Appel Media, Inc. v. Clarion State College,* 15 Pa. Commonwealth Ct. 635, 327 A.2d 420 (1974). The only statute here involved is the Act of May 31, 1911, P. L. 468, *as amended,* 36 P.S. §742 et seq., which governs the date from which interest on PennDOT contracts shall be computed, and Section 746(h) of this act, 36 P.S. §746(h) provides:

"(h) In addition to the payments herein authorized, the Secretary of Highways [now Secretary of PennDOT] shall pay to the contractor interest at the rate of five (5) per centum per annum on the amount retained, and on the final payment due the contractor beginning ninety (90) days after the work under the contract has been *completed and accepted* by the Department of Highways [now PennDOT] and running until the date when such amount retained and final payment are tendered to the contractor." (Emphasis added.)

---

conduct on the part of PennDOT, which, if proved might lead to a result contrary to that herein reached.

[2] The Board's award provided $10,097.00 interest on $90,875.00 from March 1, 1971 to May 21, 1973, for the work completed and accepted on December 1, 1970, and $2,332.00 was awarded as interest on $27,125.00 from September 2, 1971 to May 21, 1973, for the work completed and accepted on June 3, 1971.

PennDOT argues that the work here concerned was not accepted until the Secretary signed a Certificate of Completion on January 11, 1973. It cites the specifications of Form 408, incorporated by reference into the instant contract, which provide that "[t]he effective date of acceptance of the improvement will be the date on which the Secretary signs the Completion Certificate." This would seem to be a clear expression of the intent of the parties to fix the date of acceptance upon the signing of the Completion Certificate. The Board, however, concluded that a de facto acceptance of the project had taken place on December 1, 1970 and June 3, 1971 respectively. Pointing to the opening of the highway and to PennDOT's letter of August 19, 1971 the Board found that PennDOT's action evidenced such an acceptance, and it cited *General State Authority v. Loffredo,* 16 Pa. Commonwealth Ct. 237, 328 A.2d 886 (1974) as support for its conclusion. Indeed, it is true that we upheld a determination by the Board in *Loffredo* that actions of an agency may amount to a de facto acceptance of a construction project in the absence of any evidence of a formal acceptance. In that case, however, there were apparently no provisions under contract fixing the conditions necessary to a formal acceptance, and, as can be seen from our holding in *Allen N. Lashner, Inc. v. Department of Highways,* 1 Pa. Commonwealth Ct. 486, 490, 275 A. 2d 403, 405 (1971), "the parties to a contract can create valid conditions precedent to the right to bring an action on the contract. . . ." The parties' expressions of intent as incorporated by reference to specifications enumerated in Form 408, are, therefore, binding. On the other hand, of course, the parties cannot contract to do anything prohibited by law. Here, however, the law does not fix the conditions giving rise to an acceptance of the project, and we do not believe,

464

therefore, that the parties have abrogated Section 746(h) of the Act of May 31, 1911 by establishing the signing of the Completion Certificate as the date that the projects here concerned would be deemed to have been accepted. Having so expressed their intent, we believe that the parties are bound by their expressions. Accordingly, we issue the following

ORDER

AND Now, this 14th day of July, 1976, the decision and order of the Board of Arbitration and Claims is hereby reversed and interest is awarded to the Sanctis Construction Company at a rate of 5% on the amount of $118,000.24 for the period running from April 11, 1973 to August 22, 1973, the date upon which final payment was received by Sanctis.