Commonwealth of Pennsylvania, Department of Environmental Resources, Petitioner *v.* Board of Claims, Respondent.

Argued September 13, 1984, before Judges DOYLE, PALLADINO and BARBIERI, sitting as a panel of three.

*Susan J. Forney,* Deputy Attorney General, with her, *Allen C. Warshaw,* Deputy Attorney General, Chief of Litigation Section, and *LeRoy S. Zimmerman,* Attorney General, for petitioner.

*Nicholas Panarella, Jr.,* for respondent.

*Paul A. Logan, Waters, Gallagher & Trachtman,* for intervening respondent.

OPINION BY JUDGE PALLADINO, November 15, 1984:

The Commonwealth of Pennsylvania, Department of Environmental Resources (DER) has filed a petition for review in the nature of a writ of prohibition in which it seeks to prevent the Board of Claims (Board) from exercising jurisdiction over a complaint filed by Harry D. Miller, III and A Potty on the Spot, Inc. (Intervenors).

Intervenors' complaint before the Board sought damages in the amount of $464,380.25 resulting from DER's alleged erroneous revocation and subsequent reissuance of a permit which had been issued and exercised for the agricultural use of sewage sludge on Miller's Christmas tree farm. This permit allowed Miller to operate his land as a processing or disposal facility by collecting sewage sludge from his portable toilet and cesspool cleaning business and using it as fertilizer on his farm.

Intervenor Miller's permit was subsequently revoked by DER because the alleged condition of his property created a danger of pollution to the waters of the Commonwealth and the site constituted a "public nuisance", affecting the public health, safety and welfare.[1] Miller filed an appeal from DER's revocation of his permit with the Environmental Hearing Board (EHB). Prior to the disposition of Miller's appeal by the EHB, DER determined that Miller's permit should not have been revoked in the first instance and reinstated it.

---

[1] DER apparently revoked the permit because Intervenors had violated DER guidelines concerning the maximum loading rates of certain metals.

In the complaint before the Board, the Intervenors allege two alternative theories of recovery: first, that there was a breach of the contractual relationship which was created by the issuance of the permit; and second, that the revocation of the permit without just cause constitutes a claim authorized under The Fiscal Code (Code), Act of April 9, 1929, P.L. 343, *as amended,* 72 P.S. §§1-1827.10. By way of preliminary objections to Intervenors' complaint, DER challenged the Board's jurisdiction. In an opinion and order dated December 9, 1983, the Board concluded that while it lacked contract jurisdiction over Intervenors' complaint, it did have jurisdiction pursuant to the Code.[2]

On July 5, 1984, DER filed the instant petition seeking a writ of prohibition in which it asserts that the Board does not have jurisdiction to hear Intervenors' complaint under the Code.

Our Supreme Court in *Carpentertown Coal and Coke Co. v. Laird,* 360 Pa. 94, 102, 61 A.2d 426, 430 (1948) reviewed the circumstances under which a writ of prohibition may issue:

> The writ of prohibition is one which, like all other prerogative writs, is to be used only with great caution and forbearance and as an extraordinary remedy in cases of extreme necessity, to secure order and regularity in judicial proceedings if none of the ordinary remedies provided by law is applicable or adequate to afford relief. It is a writ which is not of absolute right but rests largely in the sound discretion of the court. It will never be granted where there is a complete and effective remedy

---

[2] In originally revoking Intervenors' permit DER had relied on the wrong guidelines.

by appeal, certiorari, writ of error, injunction, or otherwise.

However, it is well settled that a writ of prohibition "can be utilized to prevent the assertion by an inferior tribunal of a *clearly* erroneous claim of jurisdiction." *Akron Borough v. Pennsylvania Public Utility Commission,* 453 Pa. 554, 561, 310 A.2d 271, 275 (1973) (emphasis in original). Thus, if DER establishes the clearly erroneous nature of the Board's assertion of jurisdiction and the inadequacy of its remedy on appeal to raise the jurisdictional issue, a writ of prohibition could issue.

The Board has jurisdiction to:

[H]ear and determine all claims against the Commonwealth arising from contracts hereafter entered into with the Commonwealth, . . . [and] to hear and determine those claims authorized by the act of March 30, 1811 (P.L. 145, Ch. XCIX), entitled "An act to amend and consolidate the several acts relating to the settlement of the public accounts and the payment of the public monies, and for other purposes," and continued by Article X, act of April 9, 1929 (P.L. 343, No. 176), known as "The Fiscal Code," wherein the Auditor General and State Treasurer were granted the power to adjust and settle certain claims against the Commonwealth.

Act of May 20, 1937, P.L. 728, 72 P.S. §4651-4. Because the Board determined that it lacked contract jurisdiction over Intervenors' complaint, we are only concerned here with the Board's jurisdiction under the Code. The relevant section of the Code provides in pertinent part: "The Department of the Auditor General [now the Board] shall examine and adjust,

according to law and equity, the accounts of all persons, associations, or corporations, having claims against the Commonwealth." 72 P.S. §405.

DER argues that the history of jurisdiction under this section of the Code as well as relevant case law demonstrate that the Board's jurisdiction is limited to claims based on implied contracts or *quantum meruit*. According to DER, the authority to adjust claims against the Commonwealth was created to permit persons who provided goods or services to the Commonwealth to collect money owed to them. DER therefore contends that because Intervenors' complaint before the Board sounds in tort, the Board does not have jurisdiction and a writ of prohibition should issue.

In determining that it did have jurisdiction over Intervenors' complaint, the Board relied principally on *Lowry v. Commonwealth*, 365 Pa. 474, 76 A.2d 363 (1950). In *Lowry*, the Commonwealth entered onto Lowry's property and took materials for its use in the repair of a state highway. The Commonwealth mistakenly believed that it was removing these materials from the property of a person with whom it had contracted to do so. In affirming the dismissal of Lowry's eminent domain claim, our Supreme Court recognized that Lowry's remedy was to prove a claim under Section 405 of the Code. The Court noted:

In spite of the archaic phraseology which speaks of examining and adjusting "accounts" of persons having claims against the Commonwealth, the Act of 1811 [Fiscal Code] was never construed so narrowly as to limit redress to those persons only who might have express contracts with the Commonwealth or its agencies. On the contrary, it has been given a most liberal construction to include virtually every type of

claim except those for which special remedies are otherwise provided, and actions for negligence or for consequential damages. . . . [T]he case before us, . . . is not one of negligence or consequential damage, and though it may also sound in tort, it is one of that class of actions in which the tort can be waived and redress had by action of assumpsit. . . . Certainly the appellant here is entitled to the equitable consideration of his claim which arose solely because of the Commonwealth's unintentional and unfortunate mistake. (Citations omitted.)

*Id.* at 478-480, 76 A.2d at 365-366. *See also Commonwealth Appeal,* 429 Pa. 254, 239 A.2d 343 (1968) (Court suggested that claim under the Code might be appropriate to secure damages for injuries to owner's property caused by an invalid taking of the property by the Commonwealth).

Inasmuch as the instant case similarly presents a situation in which Intervenors arguably are entitled to an equitable consideration of their claim resulting from DER's error, it is our view that DER has failed to establish that the Board's assertion of jurisdiction is *clearly* erroneous so as to justify the issuance of a writ of prohibition.

Moreover, although requiring DER to await the correction of an alleged error at an interlocutory stage by an appeal from a final judgment might impose a hardship,

such hardship does not necessarily justify resort to certiorari or the other extraordinary writs as a means of review. In such cases appellate courts are reluctant to interfere with the decisions of lower courts, even on jurisdictional questions, which they are competent to decide and which are reviewable in the regular

course of appeal. . . . The writs may not be used as a substitute for the authorized appeal. . . .

*United States Steel Corp. v. Papadakos,* 63 Pa. Commonwealth Ct. 213, 218, 437 A.2d 1044, 1047 (1981) (quoting *United States Alkali Export Association v. United States,* 325 U.S. 196, 203 (1945)).

Moreover, DER's argument that it will incur unnecessary expenses if it is compelled to participate in the Board's proceedings has been held to be insufficient grounds upon which to base the issuance of a writ of prohibition. *Akron Borough.*

Accordingly, DER's request for a writ of prohibition is denied.

ORDER

AND Now, November 15, 1984, the Department of Environmental Resources' petition for review requesting the issuance of a writ of prohibition is denied.