549 A.2d 1008

Commonwealth of Pennsylvania, Department of General Services and Commonwealth of Pennsylvania, Department of Public Welfare, Petitioners *v.* Lhormer Real Estate Agency, Inc., Respondent.

*David A. Fitzsimons,* Assistant Counsel, with him, *Michael D. Reed,* Chief of Litigation, and *P. Alan Zulick,* Chief Counsel, for petitioners.

*Michael Jon Daley, Daley & Daley,* for respondent.

OPINION BY JUDGE SMITH, October 28, 1988:

Petitioners, the Department of Public Welfare and Department of General Services, appeal from an award of the Board of Claims (Board) which ordered and directed that Petitioners pay for all electric bills incurred for office space leased by Petitioners from Lhormer Real Estate Agency (Lhormer). The decision of the Board is reversed.

Questions presented for review are whether the Board erred in holding that the lease agreement was

based on a mutual mistake of the parties; whether the Board erred in rewriting the lease so as to require Petitioners to pay electric bills; and whether the Board had equitable jurisdiction to reform the terms of the agreement.

Petitioners and Lhormer entered into a lease for office space in a building owned by Lhormer in Clairton, Pennsylvania. The term of this lease was from May 1, 1976 to April 30, 1981, with a five year renewal option extending the lease term to April 30, 1986. In accordance with terms of the lease, Petitioners were to pay for all electricity for lighting and electrical outlets and Lhormer was to pay for all electricity for heating and air conditioning. The renewal option was exercised by Petitioners on January 12, 1981. On July 2, 1981, Lhormer submitted a letter proposal to Petitioners to provide them with additional space. The proposal was received by Leonard Manning, a real estate representative at the Department of General Services, who forwarded a copy thereof to the Department of Public Welfare. The letter proposal contained some handwritten notations by Mr. Manning indicating that Lhormer would pay for all services except janitorial.

A proposal for new space was submitted on August 14, 1981 by Lhormer on the Petitioner's standard lease proposal form and attached to it was a completed sample lease.[1] On September 21, 1981, Lhormer sent a revised proposal to Petitioners which stated "that the electricity and the cleaning bill would be paid by the tenant the same as they do in the present building they rent from us." On March 8, 1982, the Department of Public Welfare prepared the proposed lease and other documents on the basis of Mr. Manning's notations on

---

[1] The proposal was originally dated August 12, 1981 and stamped as received by Department of General Services on August 14, 1981. Hence, references throughout the record to both dates.

the July 2, 1981 letter. N.T., pp. 60-61, October 1, 1985 Hearing. The lease was forwarded to Lhormer for signature which was signed by Lhormer's representative without reading it. N.T., p. 79, October 1, 1985 Hearing.

Lhormer first discovered that it was responsible for the electricity when it started receiving the electrical bills whereupon Lhormer filed a complaint with the Board on November 4, 1982. Petitioners filed preliminary objections in the nature of a motion to strike portions of the complaint and demurrer based upon the clear terms of the lease agreement. Petitioners also asserted that the Board lacked jurisdiction to reform the contract. On June 3, 1983, the Board issued an opinion in which it denied Petitioners' preliminary objections except the motion for more specific pleading and stated that it lacked jurisdiction to reform the lease agreement and to order the tenants to pay all electric bills. Lhormer filed an amended claim to which Petitioners filed further preliminary objections once again denied by the Board for lack of jurisdiction to rewrite the contract. Hearing was held before the Board on October 1 and October 2, 1985, and on May 29, 1987, the Board issued an opinion in which it determined that a mutual mistake occurred between the parties and awarded to Lhormer an amount equal to the audited electric bills from August 1, 1982 to the payment date of the award, May 29, 1984, together with interest at the legal rate of six percent (6%) per annum. Petitioners thereafter appealed to this Court.[2]

---

[2] On an appeal from a Board decision, this Court's scope of review is limited to determining whether necessary findings were supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Department of Transportation v. Burrell Construction and Supply Co.,* 111 Pa. Commonwealth Ct. 590, 534 A.2d 585 (1987); Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704.

Petitioners claim that there is no evidence to support the Board's finding of mutual mistake. Lhormer, in support of its position, claims that the error regarding payment of electricity was a mutual and not unilateral mistake because the Department of Public Welfare never received a copy of the July 2, 1981 letter with notations by Mr. Manning's boss that electricity was not included in the lease and that Mr. Manning's replacement was mistaken as to who would pay for the electricity. Lhormer further argues that even if a unilateral mistake occurred, Petitioners are still liable because they knew or had reason to know of the mistake, citing *McFadden v. American Oil Co.*, 215 Pa. Superior Ct. 44, 257 A.2d 283 (1969) and *Appel Media Inc. v. Clarion State College*, 15 Pa. Commonwealth Ct. 635, 327 A.2d 420 (1974) in support of its argument.

The record demonstrates that there was no mutual mistake here. Lhormer simply erred. Petitioners did not know nor have reason to know of the mistake. On the July 2, 1981 letter, Petitioners' representative indicated in his handwriting that the lease did not include electricity. As it was Lhormer's responsibility to read the lease before signing it, ignorance of its contents is no defense to Lhormer's contractual obligation thereon. *See Tose v. First Pennsylvania Bank, N.A.*, 648 F.2d 879 (3d Cir. 1981), *cert. denied*, 454 U.S. 893 (1981). The mistake was clearly that of Lhormer's, and the Board erred in holding that a mutual mistake occurred between the parties.

Petitioners next argue that the Board in awarding money damages representing expenses for electrical bills has in effect rewritten the lease agreement. Reformation of a contract can only take place where there are contractual misapprehensions common to both parties. *Black Top Paving Co. v. Department of Transportation*, 77 Pa. Commonwealth Ct. 612, 466 A.2d 774 (1983).

Since no evidence exists to support a finding of mutual mistake, the Board in directing Petitioners to pay for all electrical bills rewrote the contract by adding a provision never included in the contract.

Petitioners further contend that the Board does not have equity jurisdiction to reform the contract and in doing so, it has exceeded its jurisdiction. The Board's jurisdiction is set forth in Section 4 of the Act of May 20, 1937, P.L. 728, *as amended*, 72 P.S. §4651-4 which provides, *inter alia:*

> *Powers of Board:*
> The Board of Claims shall have exclusive jurisdiction to hear and determine all claims against the Commonwealth arising from contracts hereafter entered into with the Commonwealth, where the amount in controversy amounts to $300.00 or more.

This same section also provides that the Board has exclusive jurisdiction to hear and determine all claims which were previously determined by the Auditor General and State Treasurer pursuant to Article X of the Act of April 9, 1929, P.L. 343, *as amended*, 72 P.S. §1001-1004. The jurisdiction of the Auditor General and State Treasurer acting as the original Board of Claims is set forth at 61 Pa. Code §851.2 and states:

> The Board of Claims shall examine and adjust claims against the Commonwealth arising from:
> (1) the furnishing of goods or services, or both, to the Commonwealth, where the furnishing of such goods or services, or both, is not within the terms of a valid, existing contract between the Commonwealth and the claimant, or, if under a contract between the Commonwealth and the claimant, where the amount of the claim is less than $300.00.

(2) Action or inaction by Commonwealth employes giving rise to an implied contract to compensate the claimant.

Here, the parties are clearly bound by the terms of their valid contract and the amount in controversy is greater than $300.00. Equity jurisdiction of the Board of Claims has been recognized in instances where no contract existed between the parties. *See Lowry v. Commonwealth*, 365 Pa. 474, 76 A.2d 363 (1950); *Department of Environmental Resources v. Board of Claims*, 86 Pa. Commonwealth Ct. 99, 483 A.2d 1070 (1984). As there was a valid contract, the Board was bound by its terms and could not use its equity powers to reform the contract.

An error of law having been committed, the decision of the Board is reversed.

ORDER

AND NOW, this 28th day of October, 1988, the decision of the Board of Claims *is* reversed.

Judge MACPHAIL did not participate in the decision in this case.

Judge PALLADINO concurs in the result only.