John Conti Co., Inc., Appellant, *v.* Donovan.

Argued December 5, 1947; reargued January 13, 1948. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Raymond A. White, Jr.,* for appellant.

*Walter B. Gibbons,* for appellee.

OPINION BY MR. CHIEF JUSTICE MAXEY, March 22, 1948:

This is an appeal from a judgment n. o. v. entered in favor of John P. Donovan, defendant, after John Conti Co., Inc., a Pennsylvania corporation, had recovered a verdict against him for $22,042.40 with interest from June 17, 1946 to May 14, 1947 in an action of assumpsit.

Plaintiff instituted its action to recover payment for work, labor and materials furnished under a sub-

contract to defendant (the latter being the general contractor for the erection of St. Elizabeth's Church, Wilmington, Delaware), with a profit of ten percent on the balance of the work which plaintiff was prevented from doing. Plaintiff claims that the defendant by using the results of its work was legally obligated to pay for it.

In its affidavit of defense, defendant alleges plaintiff breached its contract by failing to maintain a sufficient number of masons and other employees on the job; that it did not use the mixture for mortar required under the specifications; that it employed dirty and poorly shaped stones and set many of them in an unworkmanlike manner; and that the joints of the face stone were not properly "raked out" as called for by the contract. Defendant filed a counterclaim for $2,846.04 to cover the additional expense which he incurred in correcting the allegedly unsatisfactory work of the plaintiff; and, also, for the excess cost of completion of the plaintiff's work as called for under the contract and as computed at the time of the trial. Defendant also contends that he is an improper party to the action, that Gleeson, and Mulrooney, Architects, were the proper party defendants in an action for an alleged wrongful termination of plaintiff's sub-contract.

On or about October 23, 1945 plaintiff submitted to defendant a bid or estimate in the sum of $102,000 for all stone masonry, brickwork, and for setting all cut stone required for the construction of St. Elizabeth's Church in accordance with certain plans and specifications proposed by Gleeson and Mulrooney, Architects. In its letter of acceptance, dated October 30, 1945, defendant specified that plaintiff was to start work at once and complete it as rapidly as possible without unnecessary delays or interruptions. Under the specifications, the Architect reserved the right to terminate the employment of any objectionable sub-contractor upon three days written notice to the Contractor and have the work continued by others with the costs thereof deductible

from the contract. It was also provided that "All work must be made satisfactory to the Architect before any payments on work will be allowed." "Satisfactory" is defined under the terms of the contract as follows: "When the words 'Approved, Satisfactory . . . are used: They shall be taken to mean as decided by the Architect."

A series of letters dated March 12, April 25, May 3, May 8, June 14 and June 17, 1946, containing complaints made by the Architect about the unsatisfactory progress of plaintiff's work "due to the lack of stone masons", was directed to the plaintiff and it was ordered to discontinue its operations. Plaintiff averred that it at all times had a sufficient number of skilled stone masons and laborers on the job and that, owing to defendant's failure to complete the required excavation and to erect steel columns, commencement of its work under the contract was necessarily delayed until January 17, 1946.[1] It was not until receipt of the June 17, 1946 communication that plaintiff finally stopped its work. Prior to that time, defendant endeavored to assist plaintiff in prosecuting its operations in a prompt, satisfactory and acceptable manner. At the trial the chief criticisms directed against plaintiff's work were that the cement and lime content in the mortar mixture was deficient and not up to specifications. This resulted in "one-half the strength requirement and less than one-fourth of

---

[1] The defendant testified: "Conti did start to work on January 15 and with weather interruptions he didn't do much the rest of the month. . . . Then he fought weather and mud, and conditions in February—I was alongside of him sympathizing with him and encouraging him. We got a letter from the architect in March requesting more men and I agreed with Conti that the architect was yelling for men too soon; he could put more men to work, but if we did they might have run out quickly. . . . general working conditions much improved so that the architect started a series of letters to me in April demanding that Conti put on more men. We reasoned with him; we tried to get him to do something; he said he couldn't get the men."

the waterprofing requirement". By buttressing and waterproofing the walls, these conditions could be remedied. Mr. Kennard Seitz, superintendent on the job, when testifying as to the non-necessity of removing the portion of wall erected by plaintiff, said: "If I thought there was. it would have come down." He stated: ". . . the factor of safety, in this case I will say, will take care of it, but we didn't want to use up all the factor of safety in one place." He also added that there was no need "for buttressing the wall."

In granting defendant's motion for judgment n. o. v., the court said: "Even if its theory of the case were held to be that its effort was to prove caprice at the trial, the action must fail for not having been brought against the only persons—the architects—whose caprice would be actionable. Plaintiff alleges only that its discharge was 'wrongful' and directed its evidence solely to the purpose of showing that it was not in fact an objectionable sub-contractor. Whether it was or not, whether it was too slow or provided enough masons, and whether the defendant caused the trouble by holding up the work and delaying the plaintiff—these were all questions for the Architects to decide, and their decision was final. There was nothing for the jury to pass upon."

Plaintiff does not dispute the architect's authority to dismiss the contractor, or sub-contractor, but contends: This is not a suit where the plaintiff is trying to recover from the contractor damages for being dismissed from the job, for loss of reputation, or for other causes for which there might be damage of a similar nature; but this suit is for the work and labor performed and accepted by the contractor. It is also contended that defendant's failure to tear down the wall constructed by plaintiff constitutes an "acceptance" of the work.

The pivot of this case is that the architect's decision as to the defendant's work being satisfactory or *un*satisfactory is final. Defendant's failure to tear down work

adjudged by the architect to be *un*satisfactory does not constitute under the facts of this case an "acceptance" of that work by the defendant. In *Payne v. Roberts,* 214 Pa. 568, 579, 64 A. 86, Justice STEWART speaking for this Court said: ". . . If they [the work and materials] met the approval of the architects, that was the end of the controversy . . . That is to say, the architects on reference to themselves having determined that they were not satisfied with the walls, on appeal it might be decided by others for them that they were satisfied, notwithstanding they themselves thought and said they were not. . . . Such a provision as this, requiring the work and materials to meet the satisfaction of the architects, is neither unusual nor unreasonable. . . . Notwithstanding all we have said, however, and wholly independent of the reference clause, the plaintiffs would still have the right to maintain an action on the contract, if they could show that the dissatisfaction expressed by the architects, was brought about through collusion between the latter and the owner, in order to disturb and defeat the plaintiff in the lawful exercise of their work. . . . we fail to see anything in it [the testimony] that would warrant even reasonable supposition of bad faith on the part of the architects. Without this on their part, neither persistent opposition by the owner to the contractors, nor his repeated and continued remonstrances and arguments addressed to the architects, could establish the combination and collusion necessary to avoid the finding of the latter."

In the absence of proof of waiver of the stipulated condition precedent to payment or of collusion between the defendant and the architect, plaintiff is bound by the decision of the architect and this was adverse.

9 C. J., p. 756, section 94, states: ". . . where the contract provides . . . the work be performed subject to the approval of an architect, . . . before the builder has a right to recover compensation on his contract, such provision is binding on the parties, and, either expressly

or impliedly, makes a . . . decision . . . of an architect a condition precedent to the right of the builder to recover compensation on his contract, his employer being under no liability to pay unless this is done, or unless the obtaining of such approval . . . is excused, or waived." (Citing cases.) See also 9 C. J., p. 761-62, section 100. No "collusion" between the defendant and the architect is alleged and for plaintiff to succeed in its action against defendant, it is incumbent that it meet the burden of proof resting upon it; to wit, it must duly establish a waiver by the defendant of the condition precedent. No such waiver is alleged.

Plaintiff is barred from recovering on a quantum meruit unless he can show "by a fair preponderance of the proof, that the work or material furnished was of the value claimed over and above the damages resulting from non-compliance with the contract; that there was a sufficient excuse for his not fully completing or complying with the contract; that he was prevented from doing so by some act of the owner or his representative; or that the labor and materials were furnished by plaintiff to defendant at the latter's instance and request. . . .": 9 C. J. pp. 885-886, section 227. in *Witten v. Stout, Executor,* 284 Pa. 410, 131 A. 360, this Court in an opinion by Chief Justice MOSCHZISKER, declared that, "Unless, by amendment or otherwise, there is a clear averment in the statement of claim showing a plain intention to plant plaintiff's case on a pure quantum meruit basis, the rule . . . controls, that, where one claims on an express contract to pay a fixed compensation, he cannot, on failure to prove the contract, entitle himself to recover by proving simply the value of services rendered, without showing an actual promise to pay."

This Court said in *Waugh v. Shunk,* 20 Pa. 130: ". . . if the party purport to have skill in the business, and he undertakes for hire, he is bound to the exercise of due and ordinary skill in the employment of his art

or business . . . If he fail to come up to the standard of his duty, the consideration of the implied contract fails, and he cannot recover compensation for such work as he has done." [2]

Another deficiency in plaintiff's case is its failure to offer competent proof of any claim. It did not plead or prove the contract price, less the cost of completing the work, or the reasonable value of its performance, or the contract price pro tanto. Appellee correctly says in his paper book, "If the appellant had been entitled to recovery at all it was incumbent upon it to establish some one or more of these elements depending upon the theory on which it elected to ground its case. . . . It made no effort to prove the cost of completion nor the reasonable value of its work." Plaintiff having failed to establish any damage, it was without a basis for a verdict.

In *Huskey Mfg. Co. v. Friel-McLeister Co., Appellant*, 84 Pa. Superior Ct. 328, 333, it was stated: "Where the subject of a contract relates to building or construction, the measure of damages is the reasonable cost to the owner of completing the contract, and where there is no other evidence on the subject the actual cost to the owner is some evidence of the reasonable cost of completion."

---

[2] The cases cited by appellant differ vitally from this case. In *Dravo Contracting Co. v. Rees & Sons Co.*, 291 Pa. 387, 140 A. 148, there was sufficient proof to go to the jury that the defendant had waived strict compliance with the contract. In *Clement v. Didier-March Co.*, 244 Pa. 616, 90 A. 927, there was evidence that the plaintiff had performed his work in accordance with instructions from defendant's engineer. The court below said that "if . . . after inspection it had been accepted, the defendant company could not subsequently complain about its quality . . ." In *Hotinger v. Hoffman-Henon Co.*, 303 Pa. 283, 154 A. 598, where the defense was that "plaintiff's work was dilatory, unskillful and defective" and plaintiff offered evidence that the delay was not his fault but was due to the slowness of defendant's architect in approving samples of work, the court below held that the case presented factual issues for the jury.

Since there was no evidence of any sum due the appellant on any theory, the defendant was entitled to binding instructions. That the court below finally took this view of the case is shown by the fact that it entered judgment for the defendant n. o. v., saying, "There was nothing for the jury to pass upon."

Judgment affirmed.