BORO CONSTRUCTION, INC.

v.

RIDLEY SCHOOL DISTRICT

v.

Boro Construction, Inc.

Appeal of: Boro Construction, Inc.

Boro Construction, Inc.

v.

Ridley School District

v.

Boro Construction, Inc.

Appeal of: Ridley School District.

Commonwealth Court of Pennsylvania.

Argued Sept. 17, 2009.
Decided March 8, 2010.

Philip A. Yampolsky, Narberth, for appellant, Boro Construction, Inc.

John F.X. Reilly, Media, for appellee, Ridley School District.

BEFORE: PELLEGRINI, Judge, SIMPSON, Judge, and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

Boro Construction, Inc. (Boro) and Ridley School District (District) have filed cross appeals from the orders entered in the Court of Common Pleas of Delaware County (trial court) denying their motions for post-trial relief and entering judgment in favor of the District and against Boro on the complaint, and in favor of Boro and against the District on the District's counterclaims. We affirm.

On June 7, 1999, Boro and the District entered into contracts for general construction and electrical construction of a new high school building. *See* Reproduced Record (RR) at 836a–841a, 858a–863a. The sum due for completion under the General Construction Contract totaled $5,411,800.00, and the sum due for completion under the Electrical Contract totaled $4,599,000.00. *Id.* at 837a, 859a. Both contracts indicated that Boro would achieve substantial completion of the entire work under the contracts by August 15, 2002. *Id.*[1]

---

1. Both contracts contained the following provisions regarding payments to be made under the contracts:

   **5.1** Based upon Applications for Payment submitted by the Contractor to the Construction Manager, and upon Project Applications and Certificates for Payment issued by the Construction Manager and Architect, the Owner shall make progress payments on account of the Contract Sum to the Contractor as provided below and elsewhere in the Contract Documents.

   \*   \*   \*

   **ARTICLE 6**

   **FINAL PAYMENT**

   Final Payment, constituting the entire unpaid balance of the Contract Sum, shall be made by the Owner to the Contractor when the Contract has been fully performed by the Contractor except for the Contractor's responsibility to correct nonconforming Work ... and to satisfy other requirements, if any, which necessarily survive final payment; and (2) a final Project Certificate for Payment has been issued by the Construction Manager and Architect; such final payment shall be made by the Owner not more than 30 days after the issuance of the final Project Certificate for Payment, or as follows ... [i]n accord with **Document 00700, Article 9, as modified by Document 00800, Article 9, Paragraphs 9.3.8 and 9.3.9.**

On May 12, 2004, Boro filed a complaint in the Court of Common Pleas of Mont-gomery County alleging that the District had breached the contracts by failing to

RR at 838a, 839a, 860a, 861a (emphasis in original).

In turn, Article 9 of the General Conditions provided, in pertinent part:

**9.3.1** At least fifteen days before the date established for each progress payment, the Contractor shall submit to the Construction Manager an itemized Application for Payment for Work completed in accordance with the schedule of values....

**9.3.1.1** Such applications may include requests for payment on account of changes in the Work which have been properly authorized by Construction Change Directives but not yet included in Change Orders.

\* \* \*

**9.6.1** After the Construction Manager and Architect have issued a Project Certificate for Payment, the Owner shall make payment in the manner and within the time provided in the Contract Documents....

\* \* \*

**9.10.1** Upon completion of the Work, the Contractor shall forward to the Construction Manager a written notice that the Work is ready for final inspection and acceptance and shall also forward to the Construction Manager a final Contractor's Application for Payment. Upon receipt, the Construction Manager will forward the notice and Application to the Architect who will promptly make such inspection. When the Architect, based on the recommendation of the Construction Manager, finds the Work acceptable under the Contract Documents and the Contract fully performed, the Construction Manager and Architect will promptly issue a final Certificate for Payment stating that to the best of their knowledge, information and belief, and on the basis of their observations and inspections, the Work has been completed in accordance with terms and conditions of the Contract Documents and that the entire balance found to be due the Contractor and noted in said final Certificate is due and payable. The Construction Manager's and Architect's final Certificate for Payment will constitute a further representation that conditions listed in Subparagraph 9.10.2 as precedent to the Contractor's being entitled to final payment have been fulfilled.

**9.10.2** Neither final payment nor any remaining retained percentage shall become due until the Contractor submits to the Architect through the Construction Manager (1) an affidavit that payrolls, bills for materials and equipment, and other indebtedness connected with the Work for which the Owner ... might be responsible ... have been paid or otherwise satisfied, (2) a certificate evidencing that insurance required by the Contract Documents to remain in force after final payment is currently in effect and will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Owner, (3) a written statement that the Contractor knows of no substantial reason that the insurance will not be renewable to cover the period required by the Contract Documents, (4) consent of surety, if any, to final payment, and (5), if required by the Owner, other data establishing payment or satisfaction of obligations, such as receipts, releases and waivers of liens, claims, security interests or encumbrances arising out of the Contract, to the extent and in such form as may be designated by the Owner....

**9.10.3** If, after Substantial Completion of the Work, final completion thereof is materially delayed through no fault of the Contractor or by issuance of Change Orders affecting final completion, and the Construction Manager and Architect so confirm, the Owner shall, upon application by the Contractor and certification by the Construction Manager and Architect, and without terminating the Contract, make payment of the balance due for that portion of the Work fully completed and accepted. If the remaining balance for Work not fully completed or corrected is less than retainage stipulated in the Contract Documents, and if bonds have been furnished, the written consent of surety to payment of the balance due for that portion of the Work fully completed and accepted shall be submitted by the Contractor to the Architect through the Construction Manager prior to certification of such payment. Such payment shall be made under terms and conditions governing final payment, except that it shall not constitute a waiver of Claims. The making of final payment shall constitute a waiver of Claims by the Owner as provided in Subparagraph 4.4.5.

RR at 905a, 906a, 907a.

pay the final sums due under both the General Construction Contract and the Electrical Contract. In particular, Boro alleged that although the District had paid approximately $10,000,000.00 under the contracts, the District owed Boro the following additional sums: (1) a remaining balance due on the General Construction Contract totaling $44,237.06; (2) a remaining balance due on the Electrical Contract totaling $13,295.20; (3) approved change orders under the Electrical Contract totaling $6,444.60; (4) monies lost due to the improper disposal and use of dumpsters on site by other contractors totaling $64,-157.92 [2]; (5) damages for delay in completion of the project totaling $40,026.83 [3]; (6) costs for cellular telephone usage on site totaling $2,890.05 [4]; (7) costs for revising the building locator maps due to changes in the high school's room numbers totaling $4,751.25; and (8) costs for the installation of theatrical wiring outside the scope of the contract work totaling $72,026.89. The case was transferred to the trial court at the District's request.

On May 19, 2005, the District filed an answer to the complaint with new matter and counterclaims. In the counterclaims,

2. Article 3 of the General Conditions provided, in pertinent part:

3.15.1 The Contractor shall keep the premises and surrounding area free from accumulation of waste materials or rubbish caused by operations under the Contract. At completion of the Work the Contractor shall remove from and about the Project waste materials, rubbish, the Contractor's tools, construction equipment, machinery and surplus materials.

RR at 897a.

In addition, Section 01500 1.16A.2. of the General Construction Contract provided:

2. General Contractor will be responsible for the removal of all such trash from the jobsite and the overall cleanliness of the entire jobsite. Those Prime Contractors who do not comply with the General Contractor's overall procedure and standards shall be reported to the Construction Manager and the Owner for possible reduction of their Contract Sum in order to have that Prime Contractor's trash picked up by another separate contractor.

RR at 1068a.

3. Section 8.3.4 of the Supplementary Conditions provided:

8.3.4 No payment or compensation or claim for damages shall be made to the Contractor as compensation for damages for any delays or hindrances from any cause whatsoever in the progress of the Work, notwithstanding whether such delays be avoidable or unavoidable. The Contractor's sole remedy for delays shall be an EXTENSION OF TIME ONLY, pursuant to and only in accordance with this Paragraph 8.3, such extension to be a period equivalent to the time lost by reason of and all of the aforesaid causes, as determined by the Construction Manager. In consideration for this grant of a time extension, the Owner, the Construction Manager and/or Architect shall not be held responsible for any loss or damage or increased costs sustained by the Contractor through any delays cause by the Owner, Construction Manager or Architect or any other Contractor or on account of the aforesaid causes or any other cause of delay. In the event the Contractor shall choose to litigate this clause or issue and loses said litigation, the Contractor shall reimburse the Owner, Construction Manager, and the Architect for their reasonable attorney's and expert witness fees and all other costs and expenses incurred by them in the litigation.

RR at 947a.

4. Section 01500 1.05 of the General Construction Contract provided, in pertinent part:

A. General Contractor shall provide, maintain and pay all fees for an on-site communication service for himself, the Construction Manager, and the Owner's Representative. The on-site communication service shall incorporate digital phones to standardize contractor communications during construction of the project. . . .

\* \* \*

D. Each Prime Contractor is responsible to provide their own equipment that is compatible with General Contractor's communication service. . . .

RR at 1063a.

the District sought damages totaling $27,736.02 for the costs of reinstalling doors and door hardware that had been improperly installed by Boro. The District also sought credit change orders owed by Boro totaling $10,981.02. In addition, the District sought attorney fees pursuant to the "no damages for delay" clause of Section 8.3.4 of the Supplementary Conditions which provided that they could be recovered based on Boro's claim for delay damages. *See* RR at 947a.[5]

A non-jury trial was conducted before the trial court on July 5 through July 7, 2006. On November 6, 2006, the trial court entered a verdict in favor of the District and against Boro on the complaint, and in favor of Boro and against the District on the District's counterclaims.

■ On May 24, 2007, the trial court issued orders denying the parties' motions for post-trial relief.[6] Boro and the District then filed the instant appeal and cross-

5. More specifically, Section 8.3.4 provides, in pertinent part, that "[i]n the event the Contractor shall choose to litigate this clause or issue and loses said litigation, the Contractor shall reimburse the Owner, Construction Manager, and the Architect for their reasonable attorney's and expert witness fees and all other costs and expenses incurred by them in the litigation." *Id.*

6. In the opinion filed in support of the verdict, the trial court stated the following, in pertinent part:

[Article 5 of t]he contracts between Boro and [the District] require that in order for Boro to be paid, it had to submit a payment application as a prerequisite for receiving payment. . . .

This provision could not be waived by [the District]. Boro was well aware of the formal process. Boro has conceded that it received approximately $10,000,000 in payments for the work performed under the contract by submitting formal payment applications. Boro was clearly aware during the bidding and contract awarding process that it was bidding on a contract with a public entity. As a matter of law in Pennsylvania, contractors are particularly on notice that with regard to public entities and public funds, contractors must comply strictly with the payment procedures before they can receive payment.

&z3

Pennsylvania Courts have held that contractors cannot recover against public entities where the contractors have failed to submit the proper paperwork, even if the actions of the public entity suggest that such a submission would be unnecessary. *Morgan v. City of Johnstown,* [306 Pa. 456, 160 A. 696 (1932)]; *Emporium Area Joint*

*School Authority v. Anundson,* [191 Pa.Super. 372] 156 A.2d 554 (Pa.Super.[1959), *rev'd on other grounds,* 402 Pa. 81, 166 A.2d 269 (1960)]. While both of these cases deal with contract revisions regarding work order changes, these cases represent the general concept in Pennsylvania that municipal contract provisions are to be strictly construed. Moreover, if the contractor fails to submit a final application for payment, then the public entity, such as [the District], cannot evaluate the payment requested. If the public entity is not given the opportunity to inspect the charges, there may be reckless disbursement of public funds. Therefore, strict adherence is necessary for dealing with municipal and/or quasi-municipal contracts.

\* \* \*

Accordingly, the trial court properly found that Boro admitted that it knowingly failed to submit a final payment application as required under the general construction contract, which prevented [the District] from evaluating the requested payment. That failure by Boro violated the express terms of the contract and, therefore, barred Boro's claim.

Trial Court Opinion at 3, 4–5.

With respect to the District's counterclaims and request for attorney fees, the trial court stated the following, in pertinent part:

After hearing all the evidence presented on [the District]'s counterclaim, the trial court found that [the District] failed to meet its burden of proof that Boro allegedly was responsible for the improper installation of the doors and hardware. Since the Court found in favor of Boro on [the District]'s claim regarding the door installation, the court found that [the District] was not entitled to attorney's fees as a substantially

appeal from the trial court's orders.[7,8]

The sole claim raised by Boro in its appeal is that the trial court erred in determining that it was not entitled to recover its claims for the remaining balances due under the General Construction Contract and the Electrical Contract because it failed to submit applications for final payment. In contrast, in its appeal, the District claims that the trial court erred in determining that the District was not entitled to attorney fees because they are specifically provided for in a "no damages for delay" clause of the contract.

■ Boro claims that the trial court erred in determining that it was not entitled to recover its claims for final payment due under the General Construction Contract or the Electrical Contract because it failed to submit applications for final payment. We do not agree.[9]

■ With respect to Boro's claim for final payment under the contracts, it is well settled that the fundamental rule in construing the provisions of a contract is to ascertain and to give effect to the intention of the parties. *Empire Sanitary Landfill v. Riverside School District,* 739 A.2d 651 (Pa.Cmwlth.1999). If the contract terms are clear and unambiguous, the intention of the parties must be ascertained from the document itself. *Id.* This Court's inquiry should focus on what the agreement itself expressed, and not on what the parties may have silently intended. *Id.* It is not appropriate, under the guise of contract construction, to alter the terms to which the parties expressly agreed, whether in wisdom or folly. *Id.*

In addition, "[t]he public contract here is subject to the Procurement Code, specifically Chapter 39. 62 Pa.C.S. § 102(a); 3901–3942. Section 3931 entitles a contractor who performs in accordance with the contract to prompt payment by the government agency. 62 Pa.C.S. § 3931 [10]

prevailing party under the terms and provisions of the contract.
*Id.* at 6.

7. Initially, both Boro and the District filed the instant appeals to the Superior Court. However, by order dated November 14, 2008, the Superior Court transferred the appeals to this Court. In addition, by order dated January 7, 2009, this Court *sua sponte* consolidated the appeals for disposition.

8. This Court's scope of review of an order of a trial court denying a motion for post-trial relief is limited to a determination of whether the trial court abused its discretion or committed an error of law. *Wrazien v. Easton Area School District,* 926 A.2d 585 (Pa. Cmwlth.), *petition for allowance of appeal denied,* 594 Pa. 718, 937 A.2d 448 (2007).

9. It is well settled that this Court may affirm the decision of the trial court on any basis without regard to the basis upon which the trial court relied. *Shearer v. Naftzinger,* 560 Pa. 634, 747 A.2d 859 (2000); *Braxton v. Department of Transportation,* 160 Pa.Cmwlth. 32, 634 A.2d 1150 (1993), *petition for allow-*

*ance of appeal denied,* 539 Pa. 682, 652 A.2d 1326 (1994).

10. More specifically, Section 3931(a) of the Procurement Code states:

(a) **Entitlement of contractor to payment.**—Performance by a contractor in accordance with the provisions of a contract shall entitle the contractor to payment by the government agency.

62 Pa.C.S. § 3931(a).

In addition, Section 3941(a) provides:

(a) **Contract containing provision for retainage.**—A contract containing a provision for retainage as provided in section 3921 (relating to retainage) shall contain a provision requiring the architect or engineer to make final inspection within 30 days of receipt of the request of the contractor for final inspection and application for final payment. If the work is substantially completed, the architect or engineer shall issue a certificate of completion and a final certificate for payment, and the government agency shall make payment in full within 45 days except as provided in section 3921, less only one and one-half times the amount

...." *James Corporation v. North Allegheny School District*, 938 A.2d 474, 488 (Pa.Cmwlth.2007) (footnote added). Nevertheless, Section 3932(a) of the Procurement Code provides, in pertinent part, that "[t]he government agency shall pay the contractor ... strictly in accordance with the contract." 62 Pa.C.S. § 3932(a).[11]

██ Moreover, as this Court has previously noted, a "condition precedent" may be defined as a condition that must occur before a duty to perform under a contract arises. *Beaver Dam Outdoors Club v. Hazleton City Authority*, 944 A.2d 97 (Pa. Cmwlth.2008). While the parties to a contract do not need to use any particular words to create a condition precedent, an event or act enumerated in a contract will not be construed as a condition precedent unless it clearly appears to have been the parties' intention. *Id.* In determining the purpose of conditions precedent, the general rules of contract interpretation are applied and the intention of the parties is controlling. *Id.* If a contract contains condition precedent, that condition must be met before a duty to perform under the contract arises. *Id.* Thus, where a condition precedent has not been fulfilled, the duty to perform under the contract lays dormant and no damages are due for nonperformance. *Shovel Transfer and Storage, Inc. v. Pennsylvania Liquor Control Board*, 559 Pa. 56, 739 A.2d 133 (1999).

As noted above, in this case, both the General Construction Contract and the Electrical Contract contained specific provisions regarding final payment which required "[a] final Project Certificate for Payment [that] has been issued by the Construction Manager and Architect; such final payment shall be made by the Owner not more than 30 days after the issuance of the final Project Certificate for Payment, or as follows ... **[i]n accord with Document 00700, Article 9....**" RR at 838a, 839a, 860a, 861a (emphasis in original). In turn, the General Conditions incorporated thereby required Boro, upon completion of the work under the contracts, to forward to the Construction Manager a written notice that the work was ready for final inspection and acceptance along with a final application for payment. *Id.* at 907a. Upon receipt, the Construction Manager was to forward the notice and application to the Architect who would promptly make the inspection. *Id.* When the Architect, based on the recommendation of the Construction Manager, found the work to be acceptable and that the contracts were fully performed, the Construction Manager and Architect would promptly issue the final certificate for payment. *Id.* The General Conditions specifically provided that "[t]he Construction Manager's and Architect's final Certificate for Payment will constitute a further

required to complete any then-remaining uncompleted minor items, which amount shall be certified by the architect or engineer and, upon receipt by government agency of any guarantee bonds which may be required, in accordance with the contract, to insure proper workmanship for a designated period of time. The certificate given by the architect or engineer shall list in detail each uncompleted item and a reasonable cost of completion. Final payment of any amount withheld for the completion of the minor items shall be paid upon completion of the items in the certificate of the engineer or architect.

62 Pa.C.S. § 3941(a). *See also* Section 9 of the Contractor and Subcontractor Payment Act, Act of February 17, 1994, P.L. 73, 73 P.S. § 509(a) ("**(a) Time for payment.**—If payments under a construction contract are subject to retainage, any amounts which have been retained during the performance of the contract and which are due to be released to the contractor upon final completion shall be paid within 30 days after final acceptance of the work.").

11. *See also* Section 5 of the Contractor and Subcontractor Payment Act, 73 P.S. § 505(a) ("**(a) Construction contract.**—The owner shall

representation that conditions listed in Subparagraph 9.10.2 [12] as precedent to the Contractor's being entitled to final payment have been fulfilled." *Id.*

Such conditions that are precedent to the tender of final payment under construction contracts have long been recognized by the courts of this Commonwealth. *See, e.g., John Conti Co., Inc. v. Donovan,* 358 Pa. 566, 571–572, 57 A.2d 872, 874–875 (1948) (" '[W]here the contract provides ... the work be performed subject to the approval of an architect, ... before the builder has a right to recover compensation on his contract, such provision is binding on the parties, and, either expressly or impliedly, makes a ... decision ... of an architect a condition precedent to the right of the builder to recover compensation on his contract, his employer being under no liability to pay unless this is done, or unless the obtaining of such approval ... is excused or waived .... ' ") (citation omitted); *Payne v. Roberts,* 214 Pa. 568, 580, 64 A. 86, 90 (1906) ("Such a provision as this, requiring the work and materials to meet the satisfaction of the architects, is

neither unusual nor unreasonable. True, it confides much in the judgment, impartiality, and integrity of the architect; but it has long been a feature in building contracts, and that it obtains to-day as largely as ever shows that experience has approved it.... ").[13]

Thus, it is clear that Boro was required to establish that it strictly complied with the final payment provisions of the contracts by submitting a final application for payment to the Construction Manager and the Architect as a condition precedent to the District's duty to tender final payment under those contracts. *See, e.g.,* Sections 3932(a) and 3941(a) of the Procurement Code, 62 Pa.C.S. §§ 3932(a), 3941(a); *John Conti Co., Inc.,* 358 Pa. at 572, 57 A.2d at 875 ("In the absence of proof of waiver of the stipulated condition precedent to payment or of collusion between the defendant and the architect, plaintiff is bound by the decision of the architect.... [N]o 'collusion' between the defendant and the architect is alleged and for plaintiff to succeed in its action against defendant it is incumbent that it meet the burden of proof

pay the contractor strictly in accordance with the terms of the construction contract.").

12. As noted above, Subparagraph 9.10.2 also conditioned Boro's receipt of final payment upon its providing the architect with: (1) an affidavit that payrolls, bills for materials and equipment, and other indebtedness connected with the project for which the District might be responsible have been paid or otherwise satisfied; (2) a certificate showing that insurance required by the contracts to remain in force after final payment was in effect and would not be canceled or allowed to expire until written notice has been given to the District; (3) a written statement that Boro knew of no substantial reason that the insurance will not be renewable to cover the period required by the contracts; (4) the consent of the surety to final payment; and (5) if required by the District, other information showing the payment or satisfaction of any further obligations, such as receipts, releases and waivers of liens, claims, security interests

or encumbrances arising out of the contracts. *See* RR at 907a.

13. *See also* 8 Corbin on Contracts § 31.12 (1999) ("By the express terms of the agreement, however, the parties can make small and otherwise immaterial performances 'conditions' of a promisor's duty. Often, in construction contracts, the party for whom the work is being done makes a promise to pay expressly conditional upon a supervising architect's or engineer's presentation of a certificate. This may be a certificate that the work, or that a stated portion of the work, has been completed in accordance with the plans and specifications, or performed to the satisfaction of the engineer. The certificate may be made a condition of the promisor's duty to pay the entire contract price; but it is more likely to be a condition of the duty to pay a final balance of the price, or to the duty to pay an intermediate installment of the price ....") (footnote omitted).

resting upon it; to wit, it must duly establish a waiver by the defendant of the condition precedent. No such waiver is alleged.").[14]

■ Although it is not disputed that Boro failed to comply with these express provisions, Boro contends that the condition precedent to the District's duty to tender final payment was excused in this case. More specifically, Boro asserts that the District committed an anticipatory breach of the contracts thereby relieving Boro of its duty to submit the applications for final payment. In support of this assertion, Boro relies upon the testimony of its Chief Operating Officer at trial in which he stated that some unnamed representative of the District indicated to him that the District would not tender final payment under the contracts unless he dropped his claims regarding payment for extra work outside of the contracts. *See* Brief for Appellant at 13–16.

■ It is true that an anticipatory repudiation by an obligor will discharge an obligee's duty to perform a condition precedent. *Jonnet Development Corporation v. Dietrich Industries, Inc.*, 316 Pa.Super. 533, 463 A.2d 1026 (1983). However, with respect to the essential elements demonstrating an anticipatory breach, the Pennsylvania Supreme Court has noted:

"The requisite elements of an anticipatory breach were established by this Court in *McClelland v. New Amsterdam Casualty Co.*, 322 Pa. 429, 185 A. 198 (1936). This Court, following the standards set out by the U.S. Supreme Court in *Dingley v. Oler*, 117 U.S. 490 [6 S.Ct. 850, 29 L.Ed. 984 (1886)], stated that to constitute anticipatory breach under Pennsylvania law there must be 'an absolute and unequivocal refusal to perform or a distinct and positive statement of an inability to do so.' [*McClelland*], 322 Pa. at 433, 185 A. [at 200]. The McClelland standard is still the rule of law in Pennsylvania...."

*2401 Pennsylvania Avenue Corporation v. Federation of Jewish Agencies of Greater Philadelphia*, 507 Pa. 166, 172, 489 A.2d 733, 736 (1985).[15] Thus, "Pennsylvania law is well-settled that more than a threat of non-performance is needed before conduct can amount to an anticipatory breach of contract. The conduct must manifest an absolute and unequivocal refusal to perform...." *McAlpine v. AAMCO Automatic Transmissions, Inc.*, 461 F.Supp. 1232,

14. *See also Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 63, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984) ("Justice Holmes wrote: 'Men must turn square corners when they deal with the Government.' *Rock Island A. & L.R. Co. v. United States*, 254 U.S. 141, 143, 41 S.Ct. 55, 65 L.Ed. 188 [(1920)]. This observation has its greatest force when a private party seeks to spend the Government's money. Protection of the public fisc requires that those who seek public funds act with scrupulous regard for the requirements of law; respondent could expect no less than to be held to the most demanding standards in its quest for public funds. This is consistent with the general rule that those who deal with the Government are expected to know the law and may not rely on the conduct of Government agents contrary to the law.") (footnote omitted).

15. As the Supreme Court explained:

The rationale behind the rule of anticipatory repudiation is the prevention of economic waste. An obligee/plaintiff should not be required to perform a useless act as a condition of his right to recover for a breach when the obligor has demonstrated an absolute and unequivocal refusal to perform. However, we reject any argument suggesting a dilution of our long recognized standard of an "absolute and unequivocal refusal to perform." Our efforts to avoid economic waste must not be allowed to encourage precipitous breaches of contract. Such an approach undermines the stability of contracts and encourages unnecessary litigation.

*Id.* at 174, 489 A.2d at 737 (citations and footnote omitted).

1253 (E.D.Mich.1978) (citations omitted). *See also Jonnet Development Corporation*, 463 A.2d at 1031 (" 'An anticipatory breach of a contract occurs whenever there has been a definite and unconditional repudiation of a contract by one party communicated to another. A statement by a party that he will not or cannot perform in accordance with [an] agreement creates such a breach.' ") (citations omitted).

■ Based on the foregoing, it is clear that the Chief Operating Officer's testimony, even if deemed to be credible[16], does not establish the essential elements demonstrating an anticipatory breach of the contracts by the District. The conditional threat purportedly expressed by an unnamed representative of the District does not objectively constitute the required "absolute and unequivocal refusal to perform or a distinct and positive statement of an inability to do so." *See, e.g., 2401 Pennsylvania Avenue Corporation*, 507 Pa. at 173–174, 489 A.2d at 737 ("[A]ppellee's statement that it had no use for the space and would not consider approving the extension without a release from its obligations under the lease indicates that appellee did recognize at the very least a possible obligation under the contract. The fact that a party seeks to preserve what it deems to be a legal defense to the required performance does not reflect an intention to deliberately breach the agreement. To the contrary, it reflects an intention to avoid performance only if there is a legal basis for the refusal of performance.")[17,18]

■ Based on the foregoing, it is clear that Boro's assertion that it was relieved of its duty to submit an application for final payment to the Construction Manager and the Architect as a condition precedent to the District's duty to tender final payment under the contracts is patently without merit. It is equally clear that the trial court did not err in determining that Boro was not entitled to recover its claims

---

**16.** It is well settled that the trial court, sitting as fact finder, is free to believe all, part, or none of the evidence presented, to make all of the credibility determinations, and to resolve any conflicts in the evidence. *Commonwealth v. Holtzapfel*, 895 A.2d 1284 (Pa.Cmwlth. 2006). Thus, when acting as a fact finder, the trial court is free to reject even uncontradicted evidence that it finds lacking in credibility. *D'Emilio v. Board of Supervisors of the Township of Bensalem*, 157 Pa.Cmwlth. 64, 628 A.2d 1230 (1993). As a result, when presented with conflicting evidence, the trial court does not abuse its discretion nor commit an error of law by choosing to accept one party's evidence over the other party's evidence. *DeBald v. McCarthy*, 87 Pa.Cmwlth. 408, 487 A.2d 460 (1985).

**17.** *See also Oak Ridge Construction Company v. Tolley*, 351 Pa.Super. 32, 504 A.2d 1343, 1347 (1985) ("In the instant case, we cannot say that the language in Mr. Tolley's letter constituted a 'definite and unconditional repudiation' of the contract which 'amounts to a statement of intention not to perform except on conditions which go beyond the contract.' The letter merely stated that the charges for work performed under item twenty of the contractor's specifications were 'in dispute or disagreement' and requested resolution of the dispute under the arbitration clause of the contract. The letter did not contain an unequivocal refusal to pay the drilling charges or a repudiation of the entire contract. Thus, when Oak Ridge gave the Tolleys ten days notice that it was terminating the contract, the Tolleys had not committed an anticipatory breach.").

**18.** As a corollary to this allegation of error, Boro also claims that the District should be equitably estopped from denying compensation based upon the conditional threat purportedly expressed by the unnamed representative of the District. However, Boro did not raise this claim in its Concise Statement of Matters Complained of on Appeal that was filed pursuant to Pa.R.A.P. 1925(b). As a result, this claim has been waived for purposes of appeal. Pa.R.A.P. 1925(b)(4)(vii); *Colombari v. Port Authority of Allegheny County*, 951 A.2d 409 (Pa.Cmwlth.2008).

for the remaining balances due under the General Construction Contract and the Electrical Contract because it failed to submit applications for final payment as required by the express terms of those contracts.[19] In short, Boro's allegation of error in this regard is patently without merit.[20]

■ Finally, the District claims that the trial court erred in determining that it was not entitled to attorney fees where they are specifically provided for in a "no damages for delay" clauses of Section 8.3.4 of the Supplementary Conditions to the General Construction Contract and the Electrical Contract. More specifically, the District asserts that because Boro both pleaded and litigated a claim for delay damages in contravention of Section 8.3.4, and did not prevail on this claim, the trial court erred in failing to award attorney fees under that section.

■ As the Pennsylvania Supreme Court has recently noted:

19. In this appeal, the District also claims that the trial court's judgment could be affirmed on the alternate basis that Boro failed to pursue mandatory arbitration to resolve the instant disputes as provided for in Sections 4.7 through 4.9 of Article 4 of the General Conditions of the General Construction Contract and the Electrical Contract. However, this was not a basis upon which the trial court relied in entering judgment in this matter and, as outlined above, there is another alternative basis upon which we will affirm the trial court's judgment in this regard. As a result, we will not accede to the District's request to consider yet another alternative basis upon which to affirm the trial court in this case.

20. As a corollary to this allegation of error, Boro also argues that the trial court erred in failing to address its claims for additional compensation. However, such a claim is not fairly comprised within the Statement of Questions Involved portion of Boro's appellate brief. See Brief for Appellant at 3. As a result, any allegation of error in this regard has been waived for purposes of appeal. See Pa.R.A.P. 2116(a) ("[N]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby...."); G.M. v. Department of Public Welfare, 954 A.2d 91, 93 (Pa.Cmwlth.2008) ("[H]owever, because Petitioner failed to include this issue in the Statement of Questions Involved portion of his brief, this issue is waived ....") (citations omitted).

Moreover, to the extent that any claim of error in this regard has been preserved for our review, it is without merit. In the Concise Statement of Matters Complained of on Appeal, Boro alleged that the trial court's determination that it is not entitled to the claims for additional compensation was "contrary to the weight of the evidence". It is well settled that a claim that the verdict is against the weight of the evidence concedes that there is sufficient evidence to sustain the verdict, but that the verdict was against the weight of the evidence. Fanning v. Davne, 795 A.2d 388 (Pa.Super.2002), petition for allowance of appeal denied, 573 Pa. 697, 825 A.2d 1261 (2003). Thus, an appellate court's review of a weight of the evidence claim is a review of the trial court's exercise of discretion, and not a review of the underlying question of whether the appellate court believes that the verdict is against the weight of the evidence. Alwine v. Sugar Creek Rest, Inc., 883 A.2d 605 (Pa.Super.2005). As the Pennsylvania Supreme Court has noted, "[g]iven the unique nature of the power reposed in the trial court concerning a weight claim, this Court has emphasized on a number of occasions that, '[o]ne of the least assailable reasons for granting [or denying] a new trial is the lower court's conviction that the verdict was [or was not] against the weight of the evidence and that new process was [or was not] dictated by the interests of justice.'" Armbruster v. Horowitz, 572 Pa. 1, 10, 813 A.2d 698, 703 (2002) (citations omitted). As a result, a new trial will only be granted on the basis that the verdict is against the weight of the evidence where the verdict is so contrary to the evidence that it shocks one's sense of justice. Id.; Fanning.

Our review of the certified record in this case does not demonstrate the requisite shock to this Court's sense of justice. As a result, Boro's allegation of error in this regard is likewise without merit.

"[T]he general rule within this Commonwealth is that each side is responsible for the payment of its own costs and counsel fees absent bad faith or vexatious conduct." This so-called "American Rule" holds true "unless there is express statutory authorization, a clear agreement of the parties, or some other established exception."

*McMullen v. Kutz*, 603 Pa. 602, 612, 985 A.2d 769, 775 (2009) (citations omitted). The burden of proving entitlement to attorney fees is on the party claiming such entitlement. *Department of Transportation v. Smith*, 145 Pa.Cmwlth. 164, 602 A.2d 499, *petition for allowance of appeal denied,* 531 Pa. 657, 613 A.2d 561 (1992). In addition, where, as here, the fee-shifting provisions are contained in a contract, an appellate court will construe the contractual provisions in accordance with their plain and ordinary meaning. *Profit Wize Marketing v. Wiest*, 812 A.2d 1270 (Pa.Super.2002). Moreover, "[t]he trial court may consider whether the fees claimed to have been incurred are reasonable, and to reduce the fees claimed if appropriate." *McMullen*, 602 Pa. at 615, 985 A.2d at 777.

As noted above, Section 8.3.4 of the Supplementary Conditions provides, in pertinent part, that "[n]o payment or compensation or claim for damages shall be made to the Contractor as compensation for damages for any delays or hindrances from any cause whatsoever in the progress of the Work, [... and t]he Contractor's sole remedy for delays shall be an EXTENSION OF TIME ONLY...." RR at 947a (emphasis in original). In addition, Section 8.3.4 provides that "[i]n the event the Contractor shall choose to litigate this clause or issue and loses said litigation, the Contractor shall reimburse the Owner, Construction Manager, and the Architect for their reasonable attorney's and expert witness fees and all other costs and expenses incurred by them in the litigation." Id. Thus, in order to be awarded attorney fees pursuant to the foregoing contractual provisions, the District was required to demonstrate to the trial court's satisfaction that Boro had "los[t] said litigation".

In refusing to award attorney fees in this case, the trial court stated the following in the opinion filed in support of its order:

After hearing all the evidence presented on Defendant's counterclaim, the trial court found that [the District] failed to meet its burden of proof that Boro allegedly was responsible for the improper installation of the doors and hardware. Since the Court found in favor of Boro on Ridley's claim regarding the door installation, the court found that [the District] was not entitled to attorney's fees as a substantially prevailing party under the terms and provisions of the contract.

Trial Court Opinion at 6.

We discern no error in the trial court's determination in this regard. The word "lose" is defined, in pertinent part, as "[t]o fail to win, gain, or obtain <˜a prize> <˜a contest> ...." *Merriam–Webster's Collegiate Dictionary* 736 (11th ed. 2008). In turn, "litigate" is defined, in pertinent part, as "[t]o carry on a legal contest by judicial process...." *Id.* at 727. Likewise, "litigation" is defined as "[t]he process of carrying on a lawsuit [or a] lawsuit itself...." *Black's Law Dictionary* 1017 (9th ed. 2009).

Thus, in light of the specific language of the contracts in this case, the trial court quite properly determined that the District was not entitled to an award of attorney fees based upon its determination that Boro had prevailed with respect to the District's counterclaims in the instant lawsuit. *See, e.g., Profit Wize Marketing*, 812

A.2d at 1275 ("By entering into a stipulation for the entry of a permanent injunction both Executrain and Appellant managed to preserve certain legal rights and willingly relinquished others. . . . Such a resolution, in keeping with the nature of most settlement agreements, evidences a compromise. Neither party in this case emerges as the clear-cut winner. As the plain and unambiguous meaning of 'prevail' requires Executrain to 'triumph' or 'win' in the underlying action, we do not find that Executrain is entitled to an award of attorney fees and costs. . . . Additionally, we are not willing, nor are we permitted, to fashion an equitable remedy in the instant case because Executrain 'partially prevailed'. Although the lower court attempted to craft such a remedy, the language of the contract does not so provide."). In short, the District's allegation of error in this regard is without merit.

Accordingly, the orders of the trial court are affirmed.

### ORDER

AND NOW, this 8th of March, 2010, the orders of the Court of Common Pleas of Delaware County, dated May 24, 2007 at No. 05–3046, are AFFIRMED.