Alan Ziegler, Nicolas Bene, Lissette   :
Chevalier, Jose Munoz, and Efrain   :
Caban, Individually and on Behalf of   :
all Similarly Situated Persons   :
  :
v.   : No. 1777 C.D. 2019
  : Argued: December 7, 2020
The City of Reading and Reading   :
Area Water Authority   :
  :
Appeal of: City of Reading   :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge[1]
            HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE MICHAEL H. WOJCIK, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                       FILED: January 8, 2021

This case returns to us for the third time following our remand to the Court of Common Pleas of Berks County (trial court) in the *City of Reading v. Ziegler*, 216 A.3d 1192 (Pa. Cmwlth. 2019) (*Ziegler II*),[2] for additional calculations of the cost of City of Reading's (City) recycling program to include leaf and yard waste collection costs, prior years' deficits, or anticipated program costs. In this appeal, the City challenges the trial court's November 6, 2019 order reentering

---

[1] The decision in this case was reached before January 4, 2021, when Judge Leavitt served as President Judge.

[2] *See also Ziegler v. City of Reading*, 142 A.3d 119 (Pa. Cmwlth. 2016) (*Ziegler I*).

declaratory judgment in favor of Appellees (Residents)[3] upon determining that the City's residential curbside recycling fee is inconsistent with the Municipal Waste Planning, Recycling and Waste Reduction Act (Act 101).[4]  The City argues that the trial court abused its discretion by not complying with this Court's remand directive and by considering the City's accounting practices as evidence that the City's recycling fees violated Act 101.  Upon review, we affirm.

## I. Background

The protracted history of this case may be summarized as follows.  The City is a third-class city located in Berks County, operating under a home rule charter.[5]  The Reading Area Water Authority (RAWA)[6] is a municipal authority created under the Municipality Authorities Act.[7]   The City delegated the responsibility for solid waste planning and plan implementation under Section 303(d) of Act 101, 53 P.S. §4000.303(d), to RAWA.  Residents either reside in or maintain a place of business in the City and have paid recycling fees to the City or RAWA.

Under Act 101, cities of the third class operating under a home rule charter with populations over 10,000 are required to implement a recycling program.

---

[3] The Residents are Alan Ziegler, Nicholas Bene, Lissette Chevalier, Jose Munoz, and Efrain Caban, individually and on behalf of all similarly situated persons.

[4] Act of July 28, 1988, P.L. 556, No. 101, *as amended*, 53 P.S. §§4000.101-4000.1904.

[5] The City is also designated as financially distressed under the Municipalities Financial Recovery Act, commonly referred to as Act 47, Act of July 10, 1987, P.L. 246, No. 47, *as amended*, 53 P.S. §§11701.101-11701.712.

[6] RAWA is not participating in this appeal.

[7] 53 Pa. C.S. §§5601-5623.

2

Section 1501(a) of Act 101, 53 P.S. §4000.1501(a). Pursuant thereto, the City enacted ordinances establishing its recycling program. In March 2014, the City revised its recycling program by enacting Ordinances 20-2014 and 21-2014, which are the subject of this litigation.

Ordinance 20-2014 amended Chapter 496, Part 2 of the City's Code of Ordinances (Code), which pertains to the storage and collection of solid waste. Specifically, Ordinance 20-2014 eliminated a separate recycling fee and instituted a "Curbside Waste Collection Fee" (Curbside Fee) to cover the combined costs of collecting municipal waste, recyclable materials, and organic waste. Ordinance 21-2014 amended Chapter 212 of the City's Code governing fees by setting the Curbside Fee at $303.10 per property per year. Imbedded in the Curbside Fee is a $91.83 user fee for recyclables (Recycling Fee). The Recycling Fee applies to owners of residential properties with four or fewer units. Although owners are permitted to opt out of the City's curbside municipal waste service by securing the services of a private hauler, they are not permitted to opt out of the City's curbside recycling service.

In June 2014, Residents filed a three-count class action Complaint against the City and RAWA, challenging the assessment and collection of a service fee for curbside recycling. In Count I, Residents sought a declaratory judgment that the Recycling Fee currently assessed and collected by the City is in violation of the laws of the Commonwealth, namely, Act 101 and the Solid Waste Management Act (SWMA).[8] By joint request and agreement of the parties, the trial court considered only Count I and deferred disposition of the other two counts.

---

[8] Act of July 7, 1980, P.L. 380, *as amended*, 35 P.S. §§6018.101-6018.1003.

On December 5, 2014, the trial court ruled that the Recycling Fee was permissible and entered an order granting judgment in favor of the City. The trial court later amended its order to facilitate interlocutory appeal to this Court.

On appeal, an *en banc* panel of this Court vacated the order and remanded the matter to the trial court for further analysis consistent with our then-recent decision in *Waste Management of Pennsylvania, Inc. v. Department of Environmental Protection*, 107 A.3d 273 (Pa. Cmwlth. 2015), in which we held that recycling fees are not *per se* prohibited, but the program costs are subject to scrutiny to ensure that they are fiscally sound and in compliance with Act 101. *See Ziegler I*, 142 A.3d at 139. In particular, we directed the trial court to consider whether the City's Recycling Fee will have a negative impact on the recycling program's financial self-sufficiency, as that term is used in Act 101, or a deleterious effect on the efficiencies of the City's recycling program. *Id.* The remand also contemplated input on these questions from the Department of Environmental Protection (DEP). *Id.* at 130.

On remand, the trial court interpreted this Court's opinion "to mean that if the [R]ecycling [F]ee is permitted without limits, it will relieve the City of an incentive to increase the program's efficiency and pursue other appropriate sources of funding." *Ziegler II*, 216 A.3d at 1197 (citation omitted). "[W]hether recycling fees violate state law depends upon the particular implementation and amount of such fees because the ultimate financial self-sufficiency of the [recycling] program and making sure the program is as efficient as it could be are . . . obvious purposes of Act 101." *Id.* (internal quotations and citation omitted). "If a recycling fee works against those purposes, it is inconsistent with Act 101 and thus preempted." *Id.*

4

(internal quotations and citation omitted). The trial court then held additional evidentiary hearings and considered the parties' briefs and arguments. *Id.*

Based on the evidence and arguments presented, the trial court found that in the years 2014-2016, the Recycling Fees collected, standing alone, without including grants or sales of recyclables, exceeded the total costs of the City's recycling program, and generated a surplus. Although the trial court noted that the City's program operated at a deficit in some years, it was unclear what efforts, if any, the City made to operate the program efficiently. Ultimately, the trial court concluded that the Recycling Fees the City imposed enabled it to operate its recycling program without properly pursuing Act 101's purposes of efficiency and self-sufficiency. Thus, the trial court entered declaratory judgment in favor of Residents on Count I of their Complaint. *Ziegler II*, 216 A.3d at 1197-1200.

From the decision, the City appealed to this Court. The City argued, *inter alia*, that the trial court disregarded credible evidence proving the City's compliance with Act 101. Specifically, the City challenged the trial court's failure to include leaf and yard waste, past deficits, and anticipated costs in the calculation and analysis of the recycling program's efficiency. We agreed with the City on this particular point. We vacated and remanded for further calculations to permit the inclusion of such costs in the calculations, but otherwise affirmed in all other respects. *Ziegler II*, 216 A.3d at 1207.

On remand, the trial court conducted evidentiary hearings. However, the trial court noted that its efforts to address the issues on remand "were frustrated by the lack of credible evidence from the City to support its claim that the recycling program was run with sufficient fiscal efficiency to comply with Act 101." Trial Court Op., 11/6/19, at 2-3. The trial court continued that "[s]everal hearings were

5

abbreviated or continued at the request of counsel for the City due to changes in City personnel and difficulty obtaining information and locating records and documents pertaining to recycling costs and measures taken to maximize the financial efficiency of the recycling program." *Id.* at 3. The trial court found that City's witnesses offered little knowledge or answers regarding the City's leaf and yard waste, past deficits, and anticipated costs. *Id.* at 3-4. Ultimately, the trial court concluded that the City failed to present evidence to prove the efficiency of its recycling program through credible, reliable testimony or evidence sufficient to satisfy Act 101 under the *Waste Management* criteria. *Id.* at 4. The trial court continued: "There was no credible evidence in this case that: 1) the recycling program's expenses for the years resulting in deficits; or 2) leaf and yard waste costs; or 3) $1.2 million for the new containers, were fiscally sound expenditures, nor that the fees were set in consideration of, or to cover these expenses." *Id.* at 5-6. "Despite multiple continuances to afford the City an opportunity to produce evidence to support its position, no such credible evidence was presented." *Id.* at 6. Thus, the trial court reaffirmed the declaratory judgment previously entered in favor of the Residents that the City's Recycling Fee was contrary to Act 101. *Id.* at 6. This appeal follows.[9]

## II. Issues

On appeal, the City argues that the trial court abused its discretion by failing to comply with this Court's remand directive to include the costs for leaf and yard waste collection, prior years' deficits, and anticipated program costs in the

---

[9] Our review in a declaratory judgment action is limited to determining whether the trial court's findings are supported by substantial evidence, whether an error of law was committed, or whether the trial court abused its discretion. *Pennsylvania Independent Waste Haulers Association v. Township of Lower Merion*, 872 A.2d 224, 227 n.13 (Pa. Cmwlth. 2005).

calculation of the self-sufficiency and efficiency of the City's recycling program. In addition, the City contends that the trial court abused its discretion by considering the City's accounting practices as evidence that the City's Recycling Fees violated Act 101.

## III. Discussion
### A. Compliance with Remand Order

The City argues that the trial court failed to make the required calculations in violation of this Court's remand decision and Pa. R.A.P. 2591.[10] This Court remanded the matter to the trial court to recalculate the cost of the City's recycling program by factoring in the cost of leaf and yard waste collection, past years' deficits, and anticipated program costs. Despite this Court's clear directive, the trial court failed to make the calculations it was directed to make. Instead, the trial court rejected and admonished the City's evidence. This Court did not invite the trial court to provide an explanation as to why it did not believe the City's evidence. The trial court erroneously disregarded these costs in rendering its decision. By failing to make the required calculations, the trial court abused its discretion.

As fact-finder, the trial court maintains exclusive province over matters involving the credibility of witnesses and the weight afforded to the evidence. *In re Penn-Delco School District*, 903 A.2d 600, 608 (Pa. Cmwlth. 2006), *appeal denied*, 921 A.2d 499 (Pa. 2007). The trial court "is free to believe all, part, or none of the evidence presented," and is likewise free "to make all of the credibility

---

[10] Pa. R.A.P. 2591 states, in relevant part: "On remand of the record the court or other government unit below shall proceed in accordance with the judgment or other order of the appellate court . . . ."

determinations, and to resolve conflicts in the evidence." *Boro Construction, Inc. v. Ridley School District*, 992 A.2d 208, 218 n.16 (Pa. Cmwlth. 2010). As a result, this Court is prohibited from making contrary credibility determinations or reweighing the evidence in order to reach an opposite result. *Penn-Delco*, 903 A.2d at 608. In fact, we are bound by the findings of the trial court that have adequate support in the record so long as the findings do not evidence capricious disregard of competent and credible evidence. *Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe)*, 812 A.2d 478, 487 (Pa. 2002); *Ziegler II*, 216 A.3d at 1202-03.

In *Ziegler II*, the City argued that the trial court abused its discretion by capriciously disregarding evidence and arguments relating to the City's Recycling Fee and program costs, namely, costs associated with leaf and yard waste, past deficits, and anticipated costs. We reiterated that "[t]he purpose of the *Ziegler* [*I*] test is to determine the efficiency of the recycling program. The trial court found that the [Recycling] [F]ees covered all costs of recycling and generated surpluses and, thus, were contrary to Act 101." *Ziegler II*, 216 A.3d at 1204. However, the trial court's calculations did not consider "key data regarding actual costs of the program, such as leaf and yard waste collection costs, prior years' deficits or anticipated program costs." *Id.* By disregarding such evidence, we determined that "the trial court did not capture an accurate and complete picture of the program's efficiency." *Id.* Thus, we vacated the trial court's order and remanded for "*proper consideration of this evidence* and further calculations that include the disregarded data." *Id.* (emphasis added).

On remand, the trial court afforded the City the opportunity to present evidence regarding the impact of the City's leaf and yard waste collection costs, past deficits, and anticipated costs on its recycling program costs. The trial court fully

considered the evidence presented. However, the trial court determined that the City's evidence was not competent or credible and fell short of satisfying Act 101 under the *Waste Management* standard for efficiency. The trial court chronicled the City's delays and continuances, difficulty in locating records and documents pertaining to recycling and efforts to maximize efficiency, witnesses who lacked knowledge or answers regarding the same, and its general failure to present reliable evidence to prove the efficiency of its recycling program. The City offered no evidence specifying how it actually set the amount of user fees. "There was no credible evidence in this case that: 1) the recycling program's expenses for the years resulting in deficits; or 2) leaf and yard waste costs; or 3) $1.2 million for the new containers, were fiscally sound expenditures, nor that the fees were set in consideration of, or to cover these expenses." Trial Court Op., 11/6/19, at 5-6. The trial court ultimately concluded that there was a "lack of credible evidence from the City to support its claim that the recycling program was run with sufficient fiscal efficiency to comply with Act 101." Trial Court Op., 11/6/19, at 2.

The trial court, as fact-finder, properly exercised its discretion over evidentiary weight and credibility determinations. *See Boro Construction*, 992 A.2d at 218 n.16. We are bound by the trial court's credibility determinations. *See Penn-Delco*, 903 A.2d at 608. There is no support for the City's position that the trial court was required to accept any evidence proffered by the City, without considering its veracity or reliability, and apply it to the calculation. *See Ziegler II*. The City had alleged that these costs, if proven, would justify its Recycling Fees. *Id.* The trial court followed our remand order by providing the City an opportunity to present evidence and by fully considering the same before reaching its determination. Ultimately, the trial court determined that, despite numerous opportunities, the City

9

failed to offer credible evidence regarding these other costs to justify its Recycling Fees and defend the efficiency of its recycling program. We discern no abuse of discretion in this regard.

## B. Consideration of the City's Accounting Practices

Next, the City contends that the trial court abused its discretion by considering the City's accounting practice of including certain costs, which were unquestionably recycling costs, in the General Fund, rather than the recycling enterprise fund when calculating the efficiency and self-sufficiency of the City's recycling program. This is nothing more than a red herring used by the trial court to justify its failure to adhere to the directive of this Court's remand order. "[T]his is a declaratory judgment action, not an accounting exam." Appellant's Brief at 21. Regardless of how the City accounted for its recycling costs, if the trial court factored them into its calculation, it would not have found a surplus, and the burden would have remained with the Residents, who failed to prove that the City's fee was actually inconsistent with Act 101.

> In particular, the City takes issue with the trial court's statement:
>
> There was no credible evidence in this case that: 1) the recycling program's expenses for the years resulting in deficits; or 2) leaf and yard waste costs; or 3) $1.2 million for the new containers, were fiscally sound expenditures, nor that the fees were set in consideration of, or to cover these expenses. In fact, the leaf and yard waste disposal costs, which should have properly been included as recycling expense, had actually been intentionally covered by property tax revenues so residents could realize a tax deduction.

Trial Court Op., 11/6/19, at 5-6.

Act 101 does not require the City to account for its costs in a particular way. However, "[o]nce the Residents presented evidence tending to show that the ordinances had a negative effect on the efficiency and self-sufficiency of the recycling program, it was up to the City to rebut this evidence." *Ziegler II*, 216 A.3d at 1202. Despite multiple opportunities, the City simply failed to offer credible evidence that costs related to recycling and accounted for elsewhere in the budget were legitimately covered by its Recycling Fee or were otherwise factored into the program's efficiencies.

## IV. Conclusion

Accordingly, we affirm.

_____
MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Alan Ziegler, Nicolas Bene, Lissette : 
Chevalier, Jose Munoz, and Efrain : 
Caban, Individually and on Behalf of : 
all Similarly Situated Persons : 
                                 : 
            v. : No. 1777 C.D. 2019
                                 : 
The City of Reading and Reading : 
Area Water Authority : 
                                 : 
Appeal of: City of Reading : 

# **O R D E R**

AND NOW, this 8th day of January, 2021, the order of the Court of Common Pleas of Berks County, dated November 6, 2019, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge